NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Marriage of:

PEDRO ORTIZ, *Petitioner/Appellant*,

*v.*

JUANA DIEJUEZ, *Respondent/Appellee*.

No. 1 CA-CV 18-0606 FC
FILED 4-7-2020

Appeal from the Superior Court in Maricopa County
No. FC2017-009466
FC2017-096002
(Consolidated)
The Honorable Joan M. Sinclair, Judge

**AFFIRMED IN PART; VACATED IN PART; REMANDED**

COUNSEL

Alexander R. Arpad, Phoenix
By Alexander R. Arpad
*Counsel for Petitioner/Appellant*

Gillespie, Shields, Goldfarb & Taylor, Mesa
By Mark A. Shields
*Co-Counsel for Respondent/Appellee*

The Hogle Law Firm, PLC, Mesa
By Dana R. Hogle, Robert J. Moon
*Co-Counsel for Respondent/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Maria Elena Cruz and Judge David B. Gass joined.

---

**W I N T H R O P**, Judge:

**¶1**　　　Pedro Ortiz ("Father") appeals several rulings in the decree dissolving his marriage to Juana Diejuez ("Mother"). Father argues the court erred in the division and characterization of real property and erred in calculating his income for the purposes of determining child support and spousal maintenance. Finding the superior court erred in both respects, we vacate the family court's characterization of the real property and the other portions of the decree at issue. We affirm the remainder of the decree and remand for further proceedings consistent with this decision.

## FACTS AND PROCEDURAL HISTORY

**¶2**　　　Father and Mother were married for 22 years and have six children together. Father filed a petition for dissolution of marriage on September 21, 2017. Before the dissolution hearing, the parties agreed on several minor financial issues, but were unable to agree on issues such as child support, spousal maintenance, and division of the real property.

**¶3**　　　The court held the dissolution hearing on August 1, 2018. At the hearing, the court heard evidence on Father's income to determine proper child support[1] and spousal maintenance payments. Father's tax returns were received in evidence by stipulation and showed Father's adjusted gross income was $29,229 in 2016; $35,949 in 2015; and $37,531 in

---

[1]　　At the time of the dissolution hearing, the parties had five minor children.

2014. Father testified that he earns a total of approximately $2,604 per month—$2,200 per month from his landscaping business and an additional net of $404 per month from the couple's real property after expenses such as the mortgage payments are deducted—which totals $31,248 annually. Mother disagreed with Father's testimony and testified that Father earns over $5,000 a month—or approximately $67,000 annually—as evidenced by deposits made in the couple's joint bank account from December 2016 to November 2017. Bank records reflecting those deposits were received in evidence by stipulation.

¶4          Also at issue in the dissolution were two apartment buildings located at 1715 East Fifth Avenue (the "1715 building") and at 1717 East Fifth Avenue (the "1717 building"). In their pretrial statements, both parties agreed that the 1715 building is owned by Father and his father ("Grandfather") as joint tenants. However, Mother's pretrial statement claimed that despite Grandfather being "a title co-owner of the 1715 property," Grandfather had "no equitable interest in the property" because he never paid the mortgage or expenses on the 1715 building and never received any of the rental income generated by the 1715 building. Mother argued she was entitled to 50% of the equity in the 1715 building because Father treated it "as if he owned full fee title" and because the community paid all expenses associated with the 1715 building and received all revenue generated.[2] Father's position in his pretrial statement was that Mother had a 25% interest in the 1715 building. The 1717 building is titled in Father's name alone, but both parties' pretrial statements agreed Mother has a 50% interest in the 1717 building.

¶5          The parties reiterated their positions regarding the real property at the dissolution hearing. Father testified that he and Grandfather co-own the 1715 building as joint tenants with rights of survivorship and argued Mother's interest in the 1715 building is 25% (half of Father's half). Mother testified at trial that even though Father did not hold full fee title to the 1715 building, he treated it as "his own," and so Mother asked the court to give her 50% of the equity in the 1715 building. Father testified he was the sole owner of the 1717 building. Both parties acknowledged that the community paid all expenses associated with the real property and deposited all revenue generated into the parties' joint

_____

[2]      A letter from Grandfather was received in evidence by stipulation in which Grandfather confirmed he does not pay the mortgage or receive rent payments for the 1715 building.

bank account. Accordingly, the parties agreed that Mother should receive 50% of the community's interest in the 1717 building.

¶6 The warranty deeds for both properties were received in evidence by stipulation on the day of the hearing. The 1715 building deed shows Father received his interest in the building as his sole and separate property from Grandfather and states Father and Grandfather own the property as joint tenants with rights of survivorship. The 1717 building deed also shows Father received the 1717 building as his sole and separate property. Mortgage statements on both properties were also admitted, which show the mortgage on the 1715 building is in Grandfather's name and the mortgage on the 1717 building is in Father's name.

¶7 After consideration of all evidence, the court issued the decree of dissolution. Father was ordered to pay $1,485.57 per month in child support.[3] The court stated it "did not find [Father's] testimony relative to his income to be credible," and calculated Father's monthly income for the purposes of child support "by averaging the deposits made in the bank statements" of the parties' joint account. The annualized total of the attributed income would be $67,104. The decree also ordered spousal maintenance of $1,000 per month for thirty-six months, inexplicably finding Father "has historically earned an average of approximately $33,000 per year."

¶8 Regarding the real property, the court found both buildings were community property and ordered both be placed on the market within ninety days of the decree, with each party to receive 50% of the proceeds from each sale. Specific to the 1715 building, the court found

> [Father] claimed that the 1715 property was a joint tenancy owned by him and his father, however, the mortgage for this property was paid by the marital community and the rental income was income to the marital community. Additionally, [Grandfather] wrote a note supporting the evidence that the debts and income of that property were completely part of the marital community. [Father] treated the 1715 property as his

---

[3] The court later updated Father's monthly child support obligation to be $1,159 per month. This updated amount reflected Father's spousal maintenance obligations and fixed a clerical error made in a previous child support worksheet submitted by the State. The change did not address Father's arguments on appeal regarding his income.

own so the Court will consider this marital community property.

¶9 Father filed a timely notice of appeal from the final decree. We have jurisdiction under Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1).

**ANALYSIS**[4]

*I.    Interest in the Apartment Buildings*

¶10 On appeal, Father argues the court erred in finding the apartment buildings were community property because his interest in each building was deeded to him as sole and separate property.[5] Father contends the court also erred in finding the 1715 building was 100% community property when the property is owned by Father and Grandfather as joint tenants.[6] Father claims the court did not have jurisdiction to determine Grandfather's interest in the 1715 building without joining Grandfather as a party.

¶11 In response, Mother argues the court did not abuse its discretion because Father acknowledged in his pretrial statement that

---

[4]    Because neither Father nor Mother requested the court make findings of fact or conclusions of law pursuant to Arizona Rule of Family Law Procedure 82(a), we presume the court found every fact necessary to sustain its decision. *See Elliott v. Elliott*, 165 Ariz. 128, 135 (App. 1990).

[5]    Mother argues Father cannot challenge the characterization of the real property because he represented in his pretrial statement that the buildings were community property. However, Father took an inconsistent stance in the proceedings below, stating the buildings are community property while at the same time introducing evidence of the warranty deeds which designated the properties as Father's "sole and separate property." Because Father took an inconsistent position, and because the characterization of property is a question of law, we believe it is appropriate for the court to review the characterization of the real property.

[6]    Mother claims any argument concerning Grandfather's interest is waived because it was not asserted below. We disagree. The record reflects Father consistently acknowledged Grandfather's interest in the 1715 building, plainly stating the building was held in joint tenancy with Grandfather.

Mother had a community interest in both buildings. Mother contends the court properly divided the 1715 building, "notwithstanding the joint tenancy deed," because A.R.S. § 25-318 allows the court to "divide the community, joint tenancy and other property held in common equitably." Mother also argues Grandfather's interest only constitutes a lien in the property, not ownership, because Grandfather did not live at the property, care for it, or receive the rental income from it.[7]

¶12 We review the family court's distribution of property for an abuse of discretion; however, the classification of property as separate or community is a question of law that we review *de novo*. *Bell-Kilbourn v. Bell-Kilbourn*, 216 Ariz. 521, 523, ¶ 4 (App. 2007). We also review *de novo* whether the court has jurisdiction. *Bank of N.Y. Mellon v. Dodev*, 246 Ariz. 1, 6, ¶ 15 (App. 2018).

### A. Characterization of the Real Property

¶13 Property acquired during marriage is presumed to be community property. A.R.S. § 25-211(A). The party seeking to overcome that presumption has the burden of establishing by clear and convincing evidence the separate nature of the property. *Schickner v. Schickner*, 237 Ariz. 194, 199, ¶ 22 (App. 2015). "Property takes its character as separate or community at the time of acquisition and retains that character throughout the marriage." *Bell-Kilbourn*, 216 Ariz. at 523, ¶ 5 (internal quotation omitted). Once this character has been established, it does not change

---

[7] Mother also claims Grandfather's joint tenancy was "terminated" because joint tenancy requires presence of the "four unities" (time, title, possession, and interest). Mother asserts the unities were destroyed because Grandfather "took no part in the possession, time, and interest of the property" as the record shows he did not live at the property, take care of it, or receive income from it. While a joint tenancy does require presence of the four unities, Mother's argument misunderstands this doctrine in two ways. First, Mother does not apply the proper legal meaning to each unity (e.g., unity of time requires "the joint tenants acquired the property and executed the contract *at the same time*" not that that the joint tenants both spent *time* at the property; for unity of possession, joint tenants must have the same *right to possess* the property and "there is no requirement of *actual possession*"). *See Smith v. Tang*, 100 Ariz. 196, 204 (1966) (emphasis added). Second, even if one of the unities is destroyed and the joint tenancy is severed, a tenant's interest in the property is not terminated completely; rather, the joint tenancy is converted into a tenancy in common. *Brant v. Hargrove*, 129 Ariz. 475, 478 (App. 1981).

except by agreement or operation of law. *Schock v. Schock*, 11 Ariz. App. 53, 56 (1969).

¶14 The warranty deeds for the properties reflect that Father acquired his interest in both buildings "as his sole and separate property." In addition, the case record and public records reflect that recorded disclaimer deeds exist for each property—both signed by Mother— agreeing each building is the sole and separate property of Father and disclaiming that Mother has any interest in the buildings.[8] A valid disclaimer deed rebuts the presumption of community property and "must be enforced in the absence of fraud or mistake." *Bell-Kilbourn*, 216 Ariz. at 523-24, ¶¶ 7, 11. Fraud and mistake, however, are affirmative defenses that must be proved by clear and convincing evidence. *Bender v. Bender*, 123 Ariz. 90, 94 (App. 1979); *see also Powers v. Guar. RV, Inc.*, 229 Ariz. 555, 562, ¶ 27 (App. 2012); *Gutierrez v. Gutierrez*, 193 Ariz. 343, 347, ¶ 7 (App. 1998). If Mother alleges these disclaimer deeds were obtained by fraud or mistake, she can present that evidence to the trial court on remand.

¶15 Assuming without deciding that these properties were received by Father as his sole and separate property, we note that, although the community paid the mortgages and upkeep on both buildings, as well as lived in one of the buildings, those actions did not change the legal character of the property. *See Drahos v. Rens*, 149 Ariz. 248, 249 (App. 1985) ("[A] residence which is separate property does not change its character because it is used as a family home and mortgage payments are made from community funds."). On this record, the family court erred in finding both the 1715 building and the 1717 building were community property without adequate consideration for the character of the property at the time of acquisition, including consideration of any related documents concerning the respective interests of the parties at the time of acquisition. *See Bell-Kilbourn*, 216 Ariz. at 523, ¶ 5. Accordingly, we vacate the family court's

---

[8] The superior court did not consider the disclaimer deeds in making its decision because, inexplicably, the deeds were not produced by either party until after the dissolution hearing. Husband filed a post-trial "Motion for Relief Pursuant to Rule 85(C) of Arizona Rules of Family Law Procedure" asking the court to consider the disclaimer deeds. The court denied that motion. Because we are remanding the characterization of the real property—among other issues—to the trial court, we presume the timeliness of disclosure of these deeds will no longer be an issue, and the trial court may, if appropriate, take judicial notice of the existence and content of these deeds. *See* Ariz. R. Evid. 201(b)(2).

characterization of the buildings as community property and also vacate the order that the properties be placed on the market to be sold.

¶16        As previously noted, Father may on remand seek to introduce evidence of the disclaimer deeds. *See Johnson v. Provoyer*, 245 Ariz. 239, 241-42, ¶ 8 (App. 2018) ("The superior court has broad discretion in ruling on disclosure and discovery matters."). If the deeds are allowed, pursuant to Arizona Rule of Evidence 201(b)(2) or on any other ground, Mother may seek to rebut the disclosure deeds by presenting evidence of fraud or mistake. *See Bender*, 123 Ariz. at 94. If the court determines the buildings are Father's separate property, the community may be entitled to an equitable lien against the properties based on the community's contributions in the form of mortgage payments and maintenance costs. A.R.S. § 25-318(E)(1); *Drahos*, 149 Ariz. at 249-50.

### B.        Grandfather's Interest in the 1715 Building

¶17        The court has the power to "divide the community, joint tenancy and other property held in common equitably." A.R.S. § 25-318(A). Contrary to Mother's assertion, however, this statute only gives the court the power to divide property held in joint tenancy *between the parties to the dissolution*; it does not give the family court jurisdiction to determine third-party interests in a property held in joint tenancy between one spouse and a third party who is not joined in the proceedings.

¶18        The court has the power to join a third party when joinder is "necessary for the exercise of its authority." A.R.S. § 25-314(D); *see also* Ariz. R. Civ. P. ("Rule") 19(a) (detailing situations where a party is necessary, including when the individual's interests would be impaired or impeded by a judgment). Alternatively, the court may divide a partial interest in property without joining a third party if that third party was not an indispensable party. *Gerow v. Covill*, 192 Ariz. 9, 15, ¶ 23 (App. 1998).

¶19        Here, the court adjudicated the full interest in the 1715 building without joining Grandfather, despite the warranty deed showing Grandfather owns the 1715 building in joint tenancy with Father.[9] Without joinder, the court did not have jurisdiction to determine or disregard Grandfather's interest in the 1715 building. *See Garn v. Garn*, 155 Ariz. 156,

---

[9]        On February 11, 2020, Grandfather filed a "Motion to Intervene as Party in Interest." We deny this motion without prejudice to Grandfather on remand filing a motion to intervene in the superior court.

159 (App. 1987) ("Elementary principles of due process require that before any person may have a valid judgment entered against him, that person must have reasonable notice and an opportunity to appear and defend."). The conclusion that the 1715 building could become community property simply because Father "treated the property as his own" has no legal basis—Grandfather does not lose his ownership interest just because he did not pay the mortgage or receive the rent payments from the apartment building.

## II. Father's Income for the Purposes of Determining Child Support

¶20 Father argues the court erred in calculating his income for the purposes of determining child support in two ways: first, by attributing all rental income from the parties' real property to Father without deducting mortgage payments and other necessary expenses of maintaining the properties[10] and second, by attributing future income from the rental properties to Father while also ordering the properties be sold.

¶21 We review a court's award of child support for an abuse of discretion. *Sherman v. Sherman*, 241 Ariz. 110, 112, ¶ 9 (App. 2016). "An abuse of discretion occurs when the court commits an error of law that underlies its exercise of discretion." *Id.* at 113, ¶ 9. We will accept the superior court's factual findings unless clearly erroneous. *Id.* In addition, "[w]e will defer to the trial court's determination of witnesses' credibility and the weight to give conflicting evidence." *Gutierrez*, 193 Ariz. at 347, ¶13.

¶22 We review *de novo* the court's conclusions of law and interpretation of the Arizona Child Support Guidelines ("Guidelines"), including whether a particular receipt or expense should be included in the

---

[10] Mother argues Father did not preserve this argument for appeal because "he failed to produce any documentary or testimonial evidence of his claimed deductions." However, when questioned about his income, Father testified he collected net revenue of $404 on the properties after paying the mortgage, repairs, and utilities on the properties. In addition, mortgage statements evidencing the payments were entered into evidence by stipulation, and both parties have continuously asserted the community paid the mortgages for the properties. We find Father has preserved the argument that the necessary expenses related to the properties should be subtracted from the gross rental income.

child support calculation. *Sherman*, 241 Ariz. at 113, ¶ 9; *Patterson v. Patterson*, 226 Ariz. 356, 358-59, ¶¶ 4, 7 (App. 2011).

**¶23** Regarding Father's first argument, the Guidelines make clear that in calculating income from rent, "gross income means gross receipts minus ordinary and necessary expenses required to produce income." A.R.S. § 25-320 app. § 5(C). Here, the court stated it "did not find [Father's] testimony relative to his income to be credible" and so calculated Father's income "by averaging the deposits made in the bank statements" of the parties' joint account. Although we will not reevaluate the court's determination of Father's credibility, *see Gutierrez*, 193 Ariz. at 347, ¶ 13, the court erred as a matter of law by calculating Father's income using the bank deposits alone (reflecting gross rental income) without also subtracting the mortgage payments and other expenses necessary to continue generating rental income from the two properties.[11] Accordingly, we vacate the court's child support award and remand for a redetermination of Father's net income in accordance with this decision.

**¶24** Finally, because we vacate the court's order that the real property be placed on the market to be sold, Father's argument regarding future rental income in light of the ordered sale of the properties is moot and we need not address it.

### III. *Spousal Maintenance*

**¶25** Father argues the spousal maintenance award should be reversed based on the court's inconsistent findings of Father's income and because the decree will be altered significantly if the court recalculates child support and reconsiders equitable property allocations. We agree.

**¶26** We review an award of spousal maintenance for an abuse of discretion, which occurs when the court makes an error of law in reaching

---

[11] In his opening brief, Father argues the court "failed to deduct the mortgage payments and other expenses of maintaining the apartment buildings." Father does not clearly identify what "other expenses" he believes should have been considered, although he testified to paying the utilities and maintenance expenses of the properties. We find the record insufficient for this court to determine whether any "other expenses" were necessary to the production of rental income from the properties. *See* A.R.S. § 25-320 app. § 5(C). We leave such determination to the family court on remand.

a discretionary conclusion. *Boyle v. Boyle*, 231 Ariz. 63, 65, ¶ 8 (App. 2012). We review factual findings for clear error. *Sherman*, 241 Ariz. at 113, ¶ 9.

¶27 In the spousal maintenance portion of the decree, the court found Father "has historically earned an average of approximately $33,000 per year." Yet the child support worksheet now lists Father's income as $5,592 per month, which would total $67,104 per year. Further, as already noted, that calculation does not accurately reflect Father's net income considering the expenses necessary to maintain the rental properties.

¶28 These inconsistent findings regarding Father's income represent clear error. *See id.* We vacate the court's award of spousal maintenance and remand this issue to the superior court to recalculate and make consistent findings regarding Father's income.

¶29 We also note it may be appropriate for the court to revisit the issue of spousal maintenance on remand because our decision on child support and property allocation substantially alters the status of the decree. *See Muchesko v. Muchesko*, 191 Ariz. 265, 273 (App. 1997) (stating that when an appellate decision "substantially alters the status of the decree as written," the trial court may reconsider related issues on remand).

    *IV.*    *Attorneys' Fees*

¶30 Mother and Father both seek attorneys' fees on appeal under A.R.S. § 25-324. We do find that Mother has taken some unreasonable positions on appeal, particularly as it relates to the characterization of Father's interest in the subject real properties and as to the court's authority to resolve issues concerning the 1715 building as to Grandfather, a non-party. This is ameliorated to some extent by the inconsistent positions taken by Father in his pretrial statement and throughout trial concerning his interest in these properties. On the other hand, per the parties' most recent affidavits of financial information, Father's financial position appears more favorable. Section 25-324, however, provides that fees may be awarded based either on disparate financial condition or the reasonableness of the positions taken on appeal. Accordingly, we award Father some portion of his reasonable attorneys' fees on appeal and his costs on appeal, all contingent on his compliance with Arizona Rule of Civil Appellate Procedure ("ARCAP") 21(a).

## CONCLUSION

¶31 For the foregoing reasons, we vacate the portions of the decree pertaining to the determination of child support, spousal

maintenance, and division and characterization of the subject real property. We affirm all other portions of the decree not challenged on appeal; however, on remand, the court has discretion to reconsider all financial aspects of the decree to ensure equitable division, recognizing that our decision substantially alters the status of the decree as written. *See Muchesko*, 191 Ariz. at 273. Finally, we award Father his taxable costs on appeal and a portion of his reasonable fees, subject to compliance with ARCAP 21(a).



AMY M. WOOD • Clerk of the Court
FILED:   AA