NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Marriage of:

DALYNNE DOLE,
*Petitioner/Appellee*,

v.

PHILLIP DOLE,
*Respondent/Appellant*.

No. 1 CA-CV 19-0833 FC

FILED 12-17-2020

Appeal from the Superior Court in Maricopa County
No. FC2018-005549
The Honorable Michael C. Blair, Judge

**AFFIRMED AS MODIFIED**

COUNSEL

Berkshire Law Office, PLLC, Tempe
By Keith Berkshire, Kristi A. Reardon, Alexandra Sandlin
*Counsel for Respondent/Appellant*

Sloma Law Group, Phoenix
By Melinda M. Sloma, Alexis M. Wood
*Counsel for Petitioner/Appellee*

---

## MEMORANDUM DECISION

Presiding Judge James B. Morse Jr. delivered the decision of the Court, in which Judge Maria Elena Cruz and Judge Paul J. McMurdie joined.

---

**M O R S E**, Judge:

¶1        Phillip Dole ("Father") appeals from a decree of dissolution ("Decree") and contests the trial court's (1) calculation of his income for child support and spousal maintenance; (2) division of the parties' vehicles; and (3) award of attorney fees.  For the following reasons, we affirm the Decree as modified.[1]

### FACTS AND PROCEDURAL BACKGROUND

¶2        Father and Dalynne Dole ("Mother") were married for twenty-four years when Mother filed for divorce in 2018.  The parties have three adult and three minor children.  Relative to this appeal, the parties owned a marital residence, a rental home, and three vehicles: a 2015 Nissan Versa, a 2009 Econoline 350 Van, and a 2011 Monte Carlo.

*Father's Income and Spousal Support Calculation*

¶3        In a temporary order issued in August 2018, the trial court initially found Father's yearly gross income was $121,600 and he could pay Mother $3,000 per month in spousal maintenance.  During the trial, the parties disputed Father's income. Father testified that he earns a base salary of $127,000, plus an annual bonus paid in March.  Father's Affidavit of Financial Information ("AFI") reported a monthly gross income of $10,600 and an annual gross income of $146,603 in 2017, $123,933 in 2016, and $114,432 in 2015.  Although not included in the record on appeal, the parties agree that a tax summary showed that Father's total income was $141,651 in 2018.[2]

---

[1]        We deny Father's motion to strike Mother's Answering Brief and deny Mother's motion to file a Sur-Reply Brief as moot.

[2]        Father's reply brief admits that "Father's tax documents show that the parties' income totaled $141,651 in 2018[.]"  Father subsequently argues that an attachment to his AFI "shows Father's actual gross income totaling

¶4 Mother testified that Father's annual income was $158,431, including his bonus and extra income. Mother based her testimony on Father's June 2019 paystub, which indicated year-to-date earnings of $79,215.46, including field hazard pay, overtime pay, and a $2,544 bonus Father received in March. Mother testified that her calculation accounted for Father's annual March bonus and "[did not] allow for future bonus money[.]"

¶5 The trial court entered the Decree in October 2019. The trial court calculated Father's gross income as $158,430.92 by doubling Father's year-to-date earnings through the end of June 2019. The trial court ordered Father to continue paying Mother $3,000 per month in spousal maintenance for a six-year term. The trial court also ordered Father to pay $1,494 per month in child support payments, commencing on November 1, 2019.[3]

*The Vehicles*

¶6 Before Mother filed for divorce, the parties discussed how to divide their vehicles—Mother would keep the Versa and Econoline Van, they would use $20,000 of community funds to purchase a new car for Father, and use another $6,000 in community funds to pay off community debts.

¶7 Father used the agreed-upon $20,000 to purchase a 2018 Ford Flex one month before Mother filed for divorce. Mother used $2,000 to pay community debts, but Father removed the remaining $4,000 from their joint account and did not pay off community debts. Mother responded by removing an additional $4,000 from their joint bank account, but she testified that she later returned the money.

¶8 Father testified that the parties' agreement allowed him to use the $20,000 to purchase a new car and assume sole responsibility for the $10,000 debt associated with the new vehicle purchase. At trial, he requested that he keep the Flex with no offset to Mother, or alternatively, that the Flex, Versa, and Van be sold, and the proceeds split evenly.

---

$127,244.14 in 2018, $128,480.89 in 2017, and $131,692.16 in 2016." However, neither Father's AFI, nor the attached tax summaries provided on appeal, support these figures.

3 The trial court ordered Father to pay $1,489 per month for child support payments, along with an additional $5 per month Support Payment Clearinghouse fee.

¶9            Father sold the Monte Carlo before trial.  In a settlement conference held immediately before trial, the parties reached a new agreement pursuant to Arizona Rule of Family Law Procedure 69 ("Rule 69 Agreement") regarding the Monte Carlo.  The trial court verbally restated the parties' agreement as follows:

> Parties have also agreed to file an amended 2018 tax return. Father has agreed to pay any amount that may be owing there in exchange for [M]other foregoing [sic] her claim to the Monte Carlo vehicle.  That will be done within 60 days after the decree is filed by the court.

¶10          After the parties affirmed that they understood the terms of the agreement, the trial court "adopt[ed] it as an order of the court effective today."  The trial judge then informed the parties that "the minute entry you're going to get is just going to have general terms like I described it. I'm going to have counsel submit me the formal document.  You guys will sign off on that."  The parties subsequently filed a Notice of Filing an Order "representing the Rule 69 Agreement reached on the record in open court on August 6, 2019."  Although the proposed form of order was submitted by Mother's counsel, the notice purports to be jointly filed and signed "with permission" by counsel for both parties.  Father did not object to the notice, and the trial court entered the proposed agreement as an order ("Order"). However, the Order did not match the terms of the agreement stated by the court in the pre-trial settlement conference and omitted any reference to Mother forgoing her interest in the Monte Carlo:

> The parties shall file an amended 2018 tax return within 60 days of the entry of a Decree of Dissolution of Marriage. HUSBAND shall be responsible for any and all taxes that may be due and owing as a result of the 2018 filing.

¶11          The Decree ordered the Econoline Van sold and the proceeds split.  The Decree awarded Mother the Nissan Versa as her separate property, with no offset to Father.  The trial court awarded Father the Ford Flex as his separate property with a $12,000 offset to Mother, finding that Father used $12,000 of Mother's money when purchasing the new vehicle. The trial court also awarded Mother a $900 offset for the Monte Carlo, which Father had sold before trial.

*Attorney Fees and Special Action*

¶12          Both parties have been awarded attorney fees and costs at various times throughout the proceedings.  The trial court first awarded

4

Father attorney fees and costs associated with a motion to compel disclosure from Mother during the proceedings.

¶13     At the close of the proceedings, the trial court awarded fees to Mother after finding that Father earns significantly more than Mother and that Father had acted unreasonably when he requested additional parenting time and failed to attend mediation.  The court noted the prior award of attorney fees to Father.  It noted that "whatever Father is awarded for his attorney fees and costs for his [motion to compel] shall be credited against whatever Mother is awarded for her attorney fees and costs incurred in the case as a whole."  The trial court ultimately awarded Mother $15,000 of her requested $35,434 in attorney fees and costs.

¶14     The trial court originally awarded both parties the marital residence and rental property as joint tenants with a right of survivorship until after their youngest child graduated from high school in 2025.  Father timely appealed from the Decree.  While the appeal was pending, Father petitioned for special-action relief from the real property awards, and this Court accepted jurisdiction, reversed the trial court, and ordered the two properties sold and the profits split equally between Mother and Father. *Dole v. Blair*, 248 Ariz. 629, 634, ¶ 19 (App. 2020).  This Court granted Father an award of attorney fees in connection with the special action, stating:

> [Father] argues Mother took an unreasonable position at trial and that her appellate arguments were not made in good faith.  Having considered the financial positions of the parties and given Mother's unsupported position on the law regarding disposition of community property, in the exercise of our discretion and under A.R.S. § 25-324(B)(2), we grant Father a partial award of his reasonable attorneys' fees.

*Id.*

¶15     We have jurisdiction to consider the balance of the appeal under A.R.S. § 12-2101(A)(1).

## DISCUSSION

### I.     Calculating Gross Income.

#### A.     Standard of Review.

¶16     Child support and spousal maintenance awards are reviewed for an abuse of discretion. *Sherman v. Sherman*, 241 Ariz. 110, 112, ¶ 9 (App.

5

2016) (child support); *Leathers v. Leathers*, 216 Ariz. 374, 376, ¶ 9 (App. 2007) (spousal maintenance). We view the evidence in the record "in the light most favorable to upholding the trial court's decision" and will affirm unless the record is "devoid of competent evidence to support the decision." *Little v. Little*, 193 Ariz. 518, 520, ¶ 5 (1999) (quoting *Fought v. Fought*, 94 Ariz. 187, 188 (1963)). However, we review de novo a trial court's interpretation of the Arizona Child Support Guidelines ("Guidelines"). *Hetherington v. Hetherington*, 220 Ariz. 16, 21, ¶ 21 (App. 2008). What constitutes "gross income" is a question that requires us to interpret the Guidelines, and thus, is a question of law subject to de novo review. *Patterson v. Patterson*, 226 Ariz. 356, 358, ¶ 4 (App. 2011).

**¶17** Father argues that the trial court erred when it doubled his year-to-date earnings to calculate his annual gross income. He argues that "[t]he trial court's error is not its consideration of Father's paystub, but its mathematical error in simply doubling that paystub." Because the asserted error is mathematic, we review the trial court's calculation of Father's annual income for child support and spousal maintenance purposes for an abuse of discretion.

**B. The Trial Court Erred by Double-Counting Father's Annual Bonus.**

**¶18** The first step in calculating child support is to determine "gross income." *Sherman*, 241 Ariz. at 113, ¶ 14. Mother argues that the calculation of a party's potential future income is inherently discretionary, and that doubling Father's year-to-date earnings from his June paystub was a reasonable way for the trial court to ballpark his year-end income. She points out that Guidelines allow for courts to include income that is "not continuing or recurring" for purposes of calculating child support, and that the trial court was permitted to include Father's annual bonus, field hazard pay, and overtime pay in its calculation for gross income.

**¶19** We agree that it was within the trial court's discretion to consider these non-recurring earnings as part of Father's "gross income." But the only evidence in the record is that Father's annual bonus was paid only once a year, in March. By doubling Father's mid-year income, the trial court double-counted Father's $2,544 annual bonus to calculate his gross income. *See id.* at 114, ¶ 15 (stating that the "crucial inquiry" under the Guidelines "is whether the parent received 'actual money or cash-like benefits . . . available for expenditures'" (quoting *Cummings v. Cummings*, 182 Ariz. 383, 385 (App. 1994)). Thus, the record is "devoid of competent evidence to support the trial court's finding." *See Little*, 193 Ariz. at 520, ¶ 5

(quoting *Fought*, 94 Ariz. at 188); *cf. also Leathers*, 216 Ariz. at 377, ¶ 13 (finding an abuse of discretion where the trial court calculated gross income by annualizing an hourly wage even though "both husband and wife testified that . . . [Husband's] income is variable, and he cannot line jobs up one after the other").[4]

**¶20** Because this is a relatively minor calculation error, we modify the Decree without remand. *See* A.R.S. § 12-2103(A) (describing powers of supreme court to modify judgments and "render such judgment or order as the court below should have rendered . . . "); *Kennedy v. Kennedy*, 93 Ariz. 252, 257-58 (1963) (noting the power to modify judgments on appeal "to effect a fair and equitable division of the community property, and to avoid the expense of a retrial of these issues"); *see also Acuna v. Kroack*, 212 Ariz. 104, 115, ¶ 42 n.15 (App. 2006) (noting that the authority described in A.R.S. § 12-2103(A) "presumably applies as well to the court of appeals"). If we adjust the Child Support Worksheet used by the trial court to reflect only one payment of the annual bonus in Father's yearly gross income, Father's final child support obligation decreases from $1,494 to $1,469 per month (including the $5 Clearinghouse fee). We therefore modify the portion of the Decree ordering Father to pay child support to provide for a monthly payment of $1,469, effective from the date of the Decree.

**¶21** Father also argues the trial court erred by doubling other "non-recurring income," including his overtime pay, hazard pay, cash merit payment, paid time off, and holiday pay when calculating his gross income. He argues there was no evidence to support the trial court's assumption that these kinds of earnings received in the first half of the year would also be received in the second half of the year. However, unlike Father's annual bonus, Father did not present evidence that these earnings would not recur in the second half of 2019. The Guidelines allow courts to consider seasonal or fluctuating income and non-recurring income when determining gross income. *See* A.R.S. § 25-320 app. § 5(A). Thus, unlike with Father's annual bonus, we do not find that the trial court abused its discretion by doubling these earnings when estimating Father's gross yearly income.

---

[4] Even though the trial court double-counted the 2019 annual bonus, the calculation could be upheld if other competent evidence supported the $158,430.92 figure. *See Little*, 193 Ariz. at 520, ¶ 5. However, the parties agree that tax documents showed that Father earned, at most, $141,651 in gross income in 2018, and tax summaries attached to Father's AFI reported that Father had not earned more than $146,603 at any point from 2015 to 2018.

## C.  Father Has Not Shown the Trial Court Abused its Discretion in Ordering Him to Pay $3,000 in Spousal Maintenance.

**¶22**        The trial court found Mother was entitled to a spousal maintenance award "because she lacks sufficient property to provide for her reasonable needs." *See* A.R.S. § 25-319(A)(1).  The trial court also noted that, at trial, Father proposed paying $2,000 per month in spousal maintenance for up to three years.  After considering the thirteen statutory factors under A.R.S. § 25-319(B)(1)-(13), the trial court ordered Father to pay Mother $3,000 per month in spousal maintenance for six years.

**¶23**        Father argues that the trial court's spousal maintenance award should also be reconsidered.  As noted above, except for double-counting his $2,544 annual bonus, we have rejected Father's argument that the trial court abused its discretion in calculating his income.  While the $2,544 difference alters the amount of child support under the Guidelines, Father has not demonstrated that it would change the spousal maintenance ordered by the trial court after considering the thirteen spousal-maintenance factors specified in A.R.S. § 25-319(B).

**¶24**        Rather than focusing on a specific dollar amount, the trial court noted that Father "earns a six figure salary[,]" "has more financial resources than Mother[,]" "has a much higher earning ability in the labor market than Mother[,]" and "should be able to contribute something" to the children's future educational costs.  Father does not show how reducing his annual income by $2,544 would change the factual findings underlying the trial court's spousal maintenance award such that the spousal maintenance award would also be reduced.

**¶25**        Furthermore, the trial court initially ordered Father to pay Mother $3,000 per month in spousal maintenance based on an assumed annual income of $121,600.  Subsequently, in the Decree, the court did not alter that monthly amount even though it found that Father earned $36,000 more than the trial court had initially determined.  Thus, Father fails to show how the spousal maintenance award would be different even if the court found that Father's gross annual income was $2,544 less.

**¶26**        Father argues the temporary spousal maintenance award was based on factors that had changed by the time of trial, including the emancipation of one of the parties' minor children, and the "substantial retirement assets and other property in the Decree of Dissolution that was [sic] unavailable to [Mother] at the time of trial."  However, the trial court

was aware of these factors when it determined the amount of spousal maintenance. We defer to the trial court's resolution and decline to disturb the trial court's spousal maintenance order. *Lehn v. Al-Thanayyan*, 246 Ariz. 277, 286, ¶ 31 (App. 2019).

## II.    Division of Vehicles.

**¶27**        Father argues the trial court erred when it awarded Mother a $12,000 offset for Father's Ford Flex and a $900 offset for the value of the Monte Carlo that Father sold before filing for divorce. Father first claims the trial court failed to acknowledge the parties' pre-filing oral agreement regarding the division of vehicles. In the alternative, Father argues the trial court impermissibly altered the parties' Rule 69 Agreement when it omitted language that Mother would forgo an interest in the Monte Carlo in exchange for Father taking responsibility for any costs associated with filing an amended 2018 tax return.

### A.    Standard of Review.

**¶28**        A trial court has the authority to equitably divide community property between spouses pursuant to A.R.S. § 25-318(A). Generally, "all marital joint property should be divided substantially equally unless sound reason exists to divide the property otherwise." *Toth v. Toth*, 190 Ariz. 218, 221 (1997). We review the trial court's apportionment of community property for an abuse of discretion. *In re Marriage of Pownall*, 197 Ariz. 577, 581, ¶ 15 (App. 2000). "We begin with the presumption that property acquired by either spouse during marriage is community property." *Sommerfield v. Sommerfield*, 121 Ariz. 575, 577 (1979). That presumption can be rebutted by clear and convincing evidence. *Id.*

### B.    Oral Contract.

**¶29**        Father argues the trial court abused its discretion by failing to recognize the parties' pre-filing oral contract dividing the vehicles. However, evidence that the parties entered an enforceable contract before trial is mixed. While Father testified that he and Mother agreed to a deal allowing him to use $20,000 to purchase a new vehicle, Mother testified that Father did not "keep up his end of that negotiation" when he transferred $4,000 out of their joint account and did not use those funds to help pay off community debt.

**¶30**        Although the parties testified about their discussions, the trial court did not acknowledge any pre-filing contract regarding the division of vehicles. We presume that the trial court knows the law and applies the

correct legal standard. *Hart v. Hart*, 220 Ariz. 183, 188, ¶ 18 (App. 2009). We also presume the trial court considered all relevant evidence. *Fuentes v. Fuentes*, 209 Ariz. 51, 55-56, ¶ 18 (App. 2004). From the evidence presented at trial, the court could find that the evidence did not demonstrate an enforceable contract or that the dispute about Father's withdrawal of $4,000 from their joint account showed no meeting of the minds as necessary to form a contract. *See Muchesko v. Muchesko*, 191 Ariz. 265, 268 (App. 1997) (stating that as a contract, a settlement agreement is based on contract principles of "an offer, acceptance, consideration, a sufficiently specific statement of the parties' obligations, and mutual assent" and courts may look to the parties' conduct in deciding "whether a meeting of the minds occurred"). Alternatively, the trial court could have rejected the parties' pre-filing contract because it "d[id] not represent a fair and equitable distribution of the community property of the parties." *See Wick v. Wick*, 107 Ariz. 382, 384 (1971). The record provides adequate support for either alternative, and we do not find the trial court abused its discretion in refusing to recognize any pre-filing contract.

### C.    Rule 69 Agreement.

**¶31**        Father requests we amend the Decree to reflect the Rule 69 Agreement that Mother would forgo her claim to the Monte Carlo in exchange for Father's payment of any outstanding debt associated with the 2018 tax filing.

**¶32**        Arizona Rule of Family Law Procedure 69 governs the method by which parties may enter binding agreements. Parties are bound to such an agreement after it is found to be reasonable and approved as an enforceable order by the trial court. *See Engstrom v. McCarthy*, 243 Ariz. 469, 472, ¶ 8 (App. 2018). A trial court generally does not have discretion *sua sponte* to modify such an agreement after it is approved as an enforceable order. *Id.* at ¶¶ 8-10.

**¶33**        Father argues the trial court exceeded its authority by altering the "original" Rule 69 Agreement verbally restated on the record by the trial court. However, the trial judge informed Father that "the minute entry . . . is just going to have general terms like I described it[,]" and that counsel would need to submit to the court "the formal document[,]" which the parties would then need to approve. We find that Father waived any arguments regarding the Monte Carlo when his counsel authorized the jointly-filed notice containing the proposed form of order and subsequently failed to object or attempt to correct the Order issued by the court. *See Trantor v. Fredrikson*, 179 Ariz. 299, 300 (1994) ("[A]bsent extraordinary

circumstances, errors not raised in the trial court cannot be raised on appeal."). We affirm the Decree's orders regarding the division of the parties' vehicles.

## III.    Attorney Fees Below.

**¶34**        After considering the parties' financial resources and the reasonableness of legal positions taken, courts are authorized to order parties to pay the reasonable attorney fees and costs of another party. *See* A.R.S. § 25-324(A). We review awards of attorney fees for an abuse of discretion. *Gutierrez v. Gutierrez*, 193 Ariz. 343, 351, ¶ 32 (App. 1998). A court abuses its discretion by making an error of law in reaching a discretionary conclusion, *In re Marriage of Williams*, 219 Ariz. 546, 548, ¶ 8 (App. 2008), or by making a discretionary ruling that the record does not support, *Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 19 (App. 2009). We assume that trial courts fully consider evidence when awarding attorney fees pursuant to A.R.S. § 25-324. *See Fuentes*, 209 Ariz. at 55-56, ¶ 18.

**¶35**        Father claims the trial court abused its discretion by awarding Mother attorney fees and failing to award additional fees to Father. He argues that Mother's attorney fee award should be vacated in light of this Court's finding that Mother took unsupportable legal positions regarding the division of community property. *See Dole*, 248 Ariz. at 634, ¶ 19. Father argues that Mother's unsupported legal positions in the special action, on top of the trial court's earlier finding that Mother acted unreasonably in failing to disclose evidence at trial, combine to show the trial court abused its discretion in awarding Mother attorney fees.

**¶36**        We disagree. Father has already been granted attorney fees in connection with the conduct of which he complains. The trial court found Father acted unreasonably in separate conduct by failing to attend mediation and requesting a modification of parenting time, even though the children had already testified they did not want increased time with him. The trial court also found a financial disparity. Father does not dispute the trial court's finding that Father makes "significantly more" than Mother. The trial court did not abuse its discretion in awarding Mother her reasonable attorney fees and costs. *See Lehn*, 246 Ariz. at 286, ¶ 31 (upholding attorney fee award where the record supported a finding of financial disparity).

## IV.    Attorney Fees and Costs on Appeal.

**¶37**       Both Mother and Father request attorney fees and costs on appeal under A.R.S. § 25-324 and Rule 21 of the Arizona Rules of Civil Appellate Procedure ("ARCAP").

**¶38**       Mother argues we should grant her an attorney fee award because the trial court found a financial disparity between the parties. She also argues that Father acted unreasonably. Father does not explain why we should grant him attorney fees on appeal.

**¶39**       We exercise our discretion and deny both parties' requests for attorney fees on appeal. Although Father has prevailed in part, Mother has prevailed in the majority of this appeal. Therefore, we award Mother her costs upon compliance with ARCAP 21.

### CONCLUSION

**¶40**       We modify the portion of the Decree ordering Father to pay child support to provide for a monthly payment of $1,469 effective from the date of the Decree. We affirm the remainder of the Decree. We award Mother her costs upon compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED:    AA