384 P.3d 324

**In re the Matter of: Antonella SHER-MAN, Petitioner/Appellee,**

v.

**Derek S. SHERMAN, Respondent/Appellant.**

**No. 1 CA–CV 15–0201 FC**

Court of Appeals of Arizona, Division 1.

FILED 11/1/2016

Brown Hanna & Mull, PLLC, Prescott, By John G. Mull, Counsel for Petitioner/Appellee

Law Offices of Robert L. Frugé, P.C., Prescott, By Robert L. Frugé, Counsel for Respondent/Appellant

Presiding Judge Peter B. Swann delivered the opinion of the Court, in which Judge Lawrence F. Winthrop and Judge Donn Kessler joined.

## OPINION

SWANN, Judge:

¶1 Derek S. Sherman ("Father") challenges portions of a dissolution decree that attributed income to him for purposes of determining child support and awarding spousal maintenance to Antonella Sherman ("Mother").

¶2 We affirm the child support award. The superior court did not err by attributing income to Father despite his involuntary unemployment, and did not err by including as income loan proceeds that Father used to pay his living and medical expenses.

¶3 We vacate the spousal maintenance award. The court entered a nominal maintenance award to account for its speculation that Father might someday be able to return to work. This was error. We hold that a nominal spousal maintenance award may not be used to "hold the door open" for the possibility that a meaningful award might later become appropriate.

## FACTS AND PROCEDURAL HISTORY

¶4 Father and Mother married in 2001, and had three children together. Mother petitioned for dissolution of the marriage in February 2013.

¶5 In January 2014, Father suffered a serious medical event that rendered him unable to work in his previous occupation. He received short-term disability payments from his employer until July 2014. In May 2014, he entered a revolving credit agreement with his cousin and her husband. The agreement authorized him to withdraw up to $100,000 for ordinary and necessary essential personal expenses. By the time of trial in November 2014, Father had already used approximately $35,000 of the available funds.

¶6 In its order dissolving the parties' marriage, the superior court found that Father was not intentionally unemployed or underemployed. The court further found, however, that Father had "not shown any significant change to his lifestyle or expenditures," and "[i]t does not appear credible that Father would spend one-third of his available credit line in only six months if he did not expect to return to work or have the debt forgiven." The court therefore concluded that for purposes of calculating child support, Father should be attributed monthly gross income in the amount of the average monthly deposits to his checking account over the previous six months, the majority of which came from the line of credit. The court ordered Father to pay child support in the amount of $675 per month.

¶7 The court further ordered Father to pay spousal maintenance in the amount of $50 per month for 48 months, and denied his request for spousal maintenance. The court found that both spouses lacked sufficient property to provide for their reasonable needs, and that Father was currently unable to be self-sufficient through appropriate employment but had historically earned significant income and might someday be able to return to "some sort of employment." The court concluded that because "sufficient factors necessary to make th[e] determination [of the propriety of spousal maintenance] did not exist at the time of trial[, a] nominal award of spousal maintenance should be awarded so that this issue may be revisited at the appropriate time."

¶8 Father appeals the child support and spousal maintenance awards.

## DISCUSSION

I. THE SUPERIOR COURT DID NOT ERR BY AWARDING CHILD SUPPORT.

¶9 We review child support awards for abuse of discretion. *Engel v. Landman*,

221 Ariz. 504, 510, ¶ 21, 212 P.3d 842 (App. 2009). An abuse of discretion occurs when the court commits an error of law that underlies its exercise of discretion. *Kohler v. Kohler*, 211 Ariz. 106, 107, ¶ 2, 118 P.3d 621 (App. 2005). We accept the court's factual findings unless clearly erroneous but review de novo the court's conclusions of law and interpretation of the Arizona Child Support Guidelines, A.R.S. § 25–320 app. ("Guidelines"). *Id.* We look "to the[ Guidelines'] plain language as the most reliable indicator of the supreme court's intent." *Milinovich v. Womack*, 236 Ariz. 612, 615, ¶ 10, 343 P.3d 924 (App. 2015). We "strive to interpret the relevant subsection in conjunction with other provisions of the Guidelines and consistent with their overall purpose." *Id.*

¶ 10 The overall purpose of the Guidelines is to establish "a standard of support for children consistent with their needs and the ability of parents to pay, and to make child support awards consistent for persons in similar circumstances." *Cummings v. Cummings*, 182 Ariz. 383, 385, 897 P.2d 685 (App. 1994). "The paramount factor a trial court must consider when applying the Guidelines is the best interest of the child." *Engel*, 221 Ariz. at 513, ¶ 38, 212 P.3d 842. The Guidelines look to the gross income of both parents to approximate the amount that would have been spent on the children had the family remained intact. *Cummings*, 182 Ariz. at 385, 897 P.2d 685. "Because the Guidelines are based upon spending patterns of families at various income levels, gross income for child support purposes is not determined by the gross income shown on the parties' income tax returns, but rather on the actual money or cash-like benefits received by the household which is available for expenditures." *Id.*

### A. The Superior Court Did Not Err by Attributing Income to Father.

¶ 11 Quoting Section 5(E) of the Guidelines, Father first contends that the court may only attribute income where "earnings are reduced as a matter of choice and not for reasonable cause." Father argues that because the court expressly found that Father was not intentionally unemployed or underemployed, the court erred by attributing income to him.

¶ 12 Although Father is correct that Section 5(E) allows for attribution of income up to *earning capacity* when a parent is voluntarily unemployed, nothing in Section 5(E) conditions attribution of income on voluntary unemployment or underemployment. Indeed, Section 5(E) provides that at least minimum wage income be attributed to a parent ordered to pay child support, regardless of work status. Further, Section 5(E) expressly provides that "[t]he court *may* decline to attribute income to either parent" in cases where a parent is physically disabled. (Emphasis added.) The plain language of Section 5(E) is clear and unambiguous: if a parent is physically disabled, the court *may* decline to attribute income to that parent, *or may* choose to attribute income to that parent. *Id.*; *see also Taliaferro v. Taliaferro*, 188 Ariz. 333, 337, 935 P.2d 911 (App. 1996) (upholding attribution of income to disabled parent found capable of being employed). The discretion allowed by this rule is consistent with the overall purpose of the Guidelines. *See generally* Guideline 1. The court did not err by attributing income to Father despite his involuntary unemployment, and it appropriately stopped short of attributing Father's previous earning capacity.

### B. The Superior Court Did Not Err by Attributing Income to Father Based on Loan Proceeds.

¶ 13 Father next contends that the court erred by attributing income based on loan proceeds. Father essentially argues that a debt cannot be considered as income for child support purposes, because it must be repaid and therefore does not directly increase the borrower's wealth.

¶ 14 Under the Guidelines, the first step in calculating child support is to determine "gross income." *McNutt v. McNutt*, 203 Ariz. 28, 31, ¶ 11, 49 P.3d 300 (App. 2002). Section 5(A) broadly defines "gross income."

Gross income includes income from any source, and may include, but is not limited to, income from salaries, wages, commis-

sions, bonuses, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, social security benefits (subject to Section 26), worker's compensation benefits, unemployment insurance benefits, disability insurance benefits, recurring gifts, prizes, and spousal maintenance. Cash value shall be assigned to in-kind or other non-cash benefits. Seasonal or fluctuating income shall be annualized. Income from any source which is not continuing or recurring in nature need not necessarily be deemed gross income for child support purposes. Generally, the court should not attribute income greater than what would have been earned from full-time employment. Each parent should have the choice of working additional hours through overtime or at a second job without increasing the child support award. The court may, however, consider income actually earned that is greater than would have been earned by full-time employment if that income was historically earned from a regular schedule and is anticipated to continue into the future.

Consistent with this definition, courts "may 'consider all aspects of a parent's income' to ensure the award is just and 'based on the total financial resources of the parents.'" *Strait v. Strait*, 223 Ariz. 500, 502, ¶ 8, 224 P.3d 997 (App. 2010) (citation omitted). The Guidelines do not, however, expressly define "income," and the question to what extent "income" may include loan proceeds is an open one in Arizona. It is clear, however, that no Arizona law automatically excludes funds used for living expenses from "income" merely because they derive from a loan arrangement.

¶ 15 We hold that the computation of "income" for child support purposes must conform to the overall purpose of the Guidelines. The crucial inquiry is whether the parent received "actual money or cash-like benefits ... available for expenditures." *Cummings*, 182 Ariz. at 385, 897 P.2d 685. In other words, the question is whether the parent acquired a source of funds for living and personal expenses, from which the children would have benefitted had their parents not divorced. Whether the source of the funds was a loan or a gift is immaterial, and

the superior court's focus on the form of the transaction underlying Father's acquisition of disposable wealth was misplaced. Father did not dispute that the monies he received from his cousin were used for his living and medical expenses.

¶ 16 Because Father could control his own level of expenditures from a substantial pool of available funds, he was in a position to calibrate his own lifestyle. The court attributed income based on the amounts Father chose to receive by drawing on the line of credit. We see no reason under the Guidelines that Father should be able to select one level of expenditures for himself while supporting his children based on a lower hypothetical income level. The court therefore did not err by attributing those monies to Father as gross income for purposes of calculating his child support obligation.

## II. THE SUPERIOR COURT ERRED BY AWARDING SPOUSAL MAINTENANCE.

¶ 17 We review spousal maintenance awards for abuse of discretion. *Leathers v. Leathers*, 216 Ariz. 374, 376, ¶ 9, 166 P.3d 929 (App. 2007). A person is eligible to receive spousal maintenance if he or she meets any one of the four eligibility criteria under A.R.S. § 25-319(A). *Boyle v. Boyle*, 231 Ariz. 63, 65, ¶ 9, 290 P.3d 456 (App. 2012). Once eligibility is established, the court must consider all relevant factors to determine the appropriate amount and duration of maintenance, including whether the potential payor is able to meet both his or her own needs and the needs of the eligible spouse. A.R.S. § 25-319(B).

¶ 18 Here, the superior court found that both Mother and Father satisfied the eligibility criteria under § 25-319(A)(1) because they both lacked sufficient property to provide for their own reasonable needs, and the court acknowledged that Father's medical prognosis and future employment options were unknown. A.R.S. §§ 25-319(B)(1), (4). But the court nonetheless ordered Father to pay nominal maintenance to Mother for a two-year period. On this record, it is apparent that the maintenance award was, as the

court itself stated, nothing more than a "nominal award" imposed for the sole purpose of allowing the issue of an appropriate award to be "revisited" at a later time.[1]

¶ 19 Spousal maintenance is not intended to serve "as a method of holding open the courtroom door for possible changes of circumstances." *Neal v. Neal*, 116 Ariz. 590, 592, 570 P.2d 758 (1977). In *Neal*, our supreme court noted that the superior court should not award nominal maintenance in anticipation that an applicant who is presently ineligible for maintenance under § 25–319(A) may later become eligible based on an unforeseen change in circumstance. *Id.* at 593, 570 P.2d 758. Similarly, we hold that the court must not award nominal maintenance based on the assumption that a meaningful award may later become appropriate under § 25–319(B). That is not to say, of course, that the court may not properly award modest maintenance amounts. In *Boyle*, for example, we held that a $50 per month award to an eligible spouse was "justified under the facts of this case." 231 Ariz. at 66, ¶ 16, 290 P.3d 456. But here, the court's findings of fact show that it awarded spousal maintenance to Mother based purely on its speculation that Father might later regain the ability to return to work. We are unpersuaded by the notion that the speculation was legally appropriate because it was factually plausible. *Cf. Standage v. Standage*, 147 Ariz. 473, 479, 711 P.2d 612 (App. 1985) ("Where foreseeable circumstances exist that could fundamentally alter the ability of a spouse to provide for his or her reasonable needs, a nominal award of spousal maintenance is not improper."), *superseded by statute on other grounds as stated in Myrick v. Maloney*, 235 Ariz. 491, 494, ¶ 8, 333 P.3d 818 (App. 2014). The court was obligated to assess maintenance based on the parties' historic and existing circumstances, not on speculative predictions about the future.

¶ 20 We hold on this record that the court committed legal error, and therefore abused its discretion, by awarding spousal maintenance to Mother.

### CONCLUSION

¶ 21 For the foregoing reasons, we affirm the dissolution decree's child support award but we vacate the spousal maintenance award.

---

1. We recognize the tension between the court's conclusion that Father was unable to provide for his reasonable needs and its decision to attribute income to him based on the loan proceeds. But we need not resolve that tension here. Child support and maintenance are considered under different laws. Formal attribution of income is required under the child support guidelines, but not for purposes of maintenance. And the court's determination that Father was ineligible for maintenance is not at issue on appeal, and is relevant to its award of maintenance to Mother only to the extent that it illustrates the nominal nature of the award.