NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, ex rel., DES, KATHRYN DENISE DENSLOW,
*Petitioners/Appellees*,

*v.*

DARRELL DWAYNE DENSLOW, *Respondent/Appellant*.

No. 1 CA-CV 19-0146 FC
FILED 1-28-2020

Appeal from the Superior Court in Maricopa County
FC2016-053874
The Honorable Joseph Kreamer, Judge
The Honorable Richard F. Albrecht, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Atwater Law, PLLC, Phoenix,
By Alison Atwater
*Counsel for Petitioner/Appellee*

Keist Thurston O'Brien & Walsh, Glendale
By Steven D. Keist
*Co-Counsel for Respondent/Appellant*

Joseph W. Charles, Esq., Glendale
By Joseph W. Charles
*Co-Counsel for Respondent/Appellant*

---

**MEMORANDUM DECISION**

Judge Diane M. Johnsen delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Randall M. Howe joined.

---

J O H N S E N, Judge:

¶1 Darrell Dwayne Denslow ("Father") appeals from the amount of spousal maintenance the superior court ordered upon dissolution and also challenges a post-decree child-support order. The court did not err in either ruling in attributing income above minimum wage to Father, and the evidence supports the amount of income attributed. Accordingly, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2 Father and Kathryn Denise Denslow ("Mother") were married in 2007 and have four children. Mother petitioned for dissolution in 2016. Throughout the marriage, Father worked in medical sales, and his income fluctuated significantly. When Mother petitioned for dissolution, Father was earning $10,000 per month plus an additional $10,000 per month in company stock.

¶3 At a temporary-orders hearing in November 2016, on agreement of the parties, the court ordered Father to pay Mother $4,000 per month in "family support," along with some of her living expenses. Father's employer terminated him in December 2016. Thereafter, Father failed to pay support as ordered, and Mother petitioned to enforce the temporary orders. In accordance with the parties' stipulation, the court then relieved Father of the obligation of paying the expenses, but ordered him to pay $3,000 per month for child support and $3,000 per month for spousal maintenance. Thereafter, Father made only two of the monthly payments.

¶4            The superior court held a trial in January 2018 to address spousal maintenance and transferred the child-support issue to a Title IV-D division for a separate hearing.[1]  At the spousal-maintenance trial, Father disputed Mother's assertion that he could earn $120,000 annually. According to Father, after he was terminated, he could not find comparable work because Mother and his former employer sabotaged his career by spreading negative information about him.

¶5            The superior court rejected Father's assertion that he could earn only $500 per month.  The court stated that it could not determine what Father actually was earning based on the evidence Father presented. Instead, the court relied on Father's earning history and previous work experience, as well as Father's testimony about his current earning situation and efforts, and attributed to him an annual income of $100,000 to $150,000. The court then awarded Mother $2,500 in monthly spousal maintenance for three years.

¶6            The child-support hearing occurred in January 2019. According to Father, he then was earning $2,000 per month working for Newport Medical.  Concluding the evidence did not show a change of circumstances after the court had ruled on spousal maintenance, the court declined to reconsider the previous ruling attributing income to Father of $100,000 to $150,000 a year.  After considering the evidence, the court granted Wife child support based on Father having the ability to earn $100,000 a year.  Father filed a timely notice of appeal, and we have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1) (2020).

## DISCUSSION

¶7            We review spousal-maintenance and child-support awards for an abuse of discretion and accept the superior court's findings of fact unless they are clearly erroneous. *Engel v. Landman*, 221 Ariz. 504, 510, ¶ 21 (App. 2009) (child support); *Gutierrez v. Gutierrez*, 193 Ariz. 343, 348, ¶ 14 (App. 1998) (spousal maintenance).  An abuse of discretion occurs when the record is "devoid of competent evidence to support the decision." *Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 19 (App. 2009) (citation omitted).  Whether the court can attribute a higher income than the party is earning is a question

---

[1]       The State participated in the child-support proceedings under Title IV-D of the Social Security Act, 42 U.S.C. §§ 651-669b (2018). *See* Arizona Revised Statutes ("A.R.S.") section 25-509 (2020).  Absent material revision after the relevant date, we cite the current version of a statute or rule.

of law we review *de novo*. *Pullen v. Pullen*, 223 Ariz. 293, 295, ¶ 9 (App. 2009).

## A. The Record Supports the Spousal-Maintenance Award.

¶8 Father contends the superior court's decision to attribute income to him of $100,000 to $150,000 was unsupported by the evidence, speculative and an abuse of discretion. Father bore the burden of establishing his income. *Cullum v. Cullum*, 215 Ariz. 352, 357, ¶ 23 (App. 2007) ("The burden rests on the spouse alleging inability to pay spousal maintenance to present evidence to support such inability.").

¶9 Despite a court order to submit an updated financial affidavit before the spousal-maintenance trial, Father did not do so. Mother testified that when they were first married, Father earned $120,000 a year, had earned as much as $230,000 a month a few years ago, and continued to earn at least $10,000 a month at the time of trial. For his part, Father testified that at the time of trial, he was earning only $500 a month plus commissions working for two Scottsdale pharmacies. In support of his contention that he could earn only $500 a month, Father offered three paystubs from 2017, each reflecting gross pay of $230.77, and three bank statements from 2017 that he testified showed deposits of less than $500 a month. Father further testified, however, that he also was working as a managing partner and chief of global sales with another medical-sales company, from which he earned commissions. He also testified that, as the court put it in summarizing its findings, his "phone is being paid for and [his] gym membership is being paid for."

¶10 The superior court found that Father historically earned at least $120,000 a year, a finding supported by the record. Father testified he was highly successful in the medical-sales field and worked as a nationally recognized top-level executive in that industry for many years. Until December 2016, Father annually earned a $120,000 salary plus $120,000 in stock. After he was terminated, Father received a job offer in 2017 for $10,000 per month plus 40% commissions, although Father testified that offer was later rescinded as a result of disparaging remarks by Mother and his former employer. Nevertheless, referring to the damage his reputation suffered as a result of those remarks, Father testified, "Thankfully, time heals most wounds." As far as his employment prospects, Father testified that "it's gotten a lot better," he was "having conversations at very high levels to continue employment," and "things are going better in the sales world." He testified he was having business dinners and meeting with physicians on behalf of medical companies. Thus, the evidence supports

the court's finding that Father was actively working in some sales positions, despite some delay in receiving commissions.

¶11       Explaining its findings on the record, the court began by pointing out that Father had failed to provide an affidavit of financial information that would have given "clarity" about what he actually was earning, his sources of income and his expenses. And, in the absence of that sworn statement, Father offered no definitive evidence about his earnings at the time of trial. The court acknowledged Father's struggle to find a position paying what he had historically made but concluded that, based on Father's accounts of recently being in surgeries (presumably in connection with sales of medical equipment) and business dinners, he had "an active sales process" underway. The court noted that Father's earning capacity had suffered due to issues with his former employer, but concluded it was confident that Father would "bounce back." The court ultimately found Father would "pretty quickly" be earning $100,000 to $150,000 a year, both taking into account his historical earnings and "recognizing the challenges [Father has] now."

¶12       Contrary to Father's contention, the court did not base its decision solely on his past earning history. The court also gave due regard to Father's struggle to find work that would pay what he had historically earned. Expressly declining to attribute to Father his "highest historical average" earnings, the court concluded it would attribute to Father income "where I think you're probably going to be going forward; not where you're at this very minute, although again, there's been a real lack of clarity as to that."

¶13       The superior court was in the best position to determine the witnesses' credibility and was not required to accept Father's testimony. *See State v. Gallagher*, 169 Ariz. 202, 203 (App. 1991) (witness credibility is for the superior court, not the appellate courts); *Aries v. Palmer Johnson, Inc.*, 153 Ariz. 250, 261 (App. 1987) ("The trial court is not bound to accept as true the uncontradicted testimony of an interested party."). Given Father's failure to offer complete financial documentation, including, at a minimum, a current sworn affidavit of financial information, the court did not abuse its discretion by relying in part on his work experience and prior earning

ability to attribute an annual income of $100,000 to $150,000 for purposes of spousal maintenance.[2]

## B.     The Record Supports the Child-Support Order.

### 1.     Father's termination from his prior employment did not preclude the court from attributing an income above minimum wage.

¶14        Father argues the court erred in early 2019 by attributing to him an income above minimum wage for purposes of child support because he was terminated from his job in late 2016, and, therefore, his reduced income was not voluntary or unreasonable. Father contends the Child Support Guidelines, A.R.S. § 25-320 app. § 5(E) (2020) ("Guidelines"), allow a court to attribute income up to earning capacity only when a parent's unemployment or underemployment is voluntary and not for reasonable cause.

¶15        The Guidelines give the court discretion to consider the reasons for a parent's unemployment or underemployment. Guidelines § 5(E) ("If a parent is unemployed or working below full earning capacity, the court may consider the reasons."). Whether a parent's unemployment or underemployment is involuntary is only one of the factors bearing on the issue. According to Guidelines § 5(E), the court shall attribute at least minimum wage after considering

> the parents' assets, residence, employment and earnings history, job skills, educational attainment, literacy, age, health, criminal record and other employment barriers, and record of seeking work, as well as the local job market, the availability of employers willing to hire the parents,

---

[2]        Father suggests in his reply brief that Mother is to blame for not seeking additional financial discovery. This argument is waived. *See Johnson v. Provoyeur*, 245 Ariz. 239, 243, ¶ 13, n.5 (App. 2018) (issues first raised in a reply brief are waived). In any event, Father failed to comply with the mandatory disclosure requirements in Arizona Rule of Family Law Procedure 49(C) and (D) (2018). *See also* Ariz. R. Fam. Law P. 49(b), (e)–(f) (2020). We also do not consider Father's contention, first raised in his reply brief, that Mother did not qualify for spousal maintenance. *See Johnson*, 245 Ariz. at 243, ¶ 13, n.5.

prevailing earnings level in the local community, and other relevant background factors in the case.

¶16 The Guidelines plainly authorize the court to attribute more than minimum wage if the circumstances warrant. For example, in *Sherman v. Sherman*, 241 Ariz. 110, 112, ¶ 5 (App. 2016), the father was not voluntarily unemployed; he could not work because of a medical condition. This court held that the superior court properly exercised its discretion in attributing to the father income of more than minimum wage but less than his previous earning capacity "despite his involuntary unemployment." *Id.* at 113, ¶ 12. Here, Father argues *Sherman* is distinguishable because that unemployed parent had access to funds to pay for child support. Although the court considered the parent's financial resources in *Sherman,* the court held that the Guidelines do not "condition[] attribution of income on voluntary unemployment or underemployment." *Id.* at 113-14, ¶¶ 12, 15-16; *see also Taliaferro v. Taliaferro*, 188 Ariz. 333, 336-37 (App. 1996) (affirming the attribution of income to an unemployed father who was on disability because his work history and education supported the finding that he was capable of gainful employment). The court here did not err by considering Father's prior work experience and earning capacity in attributing more than minimum wage.[3]

### 2. The record supports the income attributed for purposes of child support.

¶17 Father argues in his reply brief that the court erred by failing to reconsider his income at the child-support hearing. The record belies Father's contention. The court concluded that the earlier ruling on spousal maintenance "sets a baseline" of $100,000 to $150,000 for Father's income, but allowed Father to offer evidence to show that his circumstances had since changed. On appeal, Father points to no such evidence in the record.

¶18 Father also argues that no evidence supported the finding that he could earn $100,000 per year for purposes of calculating child support. Father did not, however, offer current bank statements, pay stubs, tax returns or other financial documentation at the child-support hearing. Instead, Father relied solely on his testimony and his October 2018 financial affidavit, which stated that he earned $2,250 per month at Newport

---

[3] This is particularly true given that, even though Father did not voluntarily quit his former job, the court that ruled on spousal maintenance concluded he was at least partially to blame for his employer's decision to let him go.

Medical. Father failed to provide any documentary evidence to support his contention that he had applied for "a hundred" other jobs without success.

¶19 By contrast, the court heard evidence disputing Father's testimony about his income. For example, in a text message, Father sent Mother a picture of himself holding what appeared to be several thousand dollars in cash, stating that he will spend every dollar he gets until he sees his children. The court also admitted in evidence a receipt showing that Father received a $500 wire transfer in April 2018, and Mother testified that he had given the children cash and gifts. Further, Mother testified Father told her he was offered an executive position in Dallas in August 2018 and also that he was attending various business dinners and meetings.

¶20 As in the prior trial, Father argued Mother and his former employer were responsible for his inability to find a position that paid what he earned in the past. The court found no credible evidence, however, that Mother caused Father's reduced income. As Father conceded, he tested positive for cocaine in 2016, and Mother's testimony and Father's failure to undergo court-ordered drug testing in a timely manner support the court's finding that he has a substance-abuse problem. And Father admitted that illicit drug-use is "a career ender" in his industry.

¶21 Father also argues the court failed to explain its reasons for attributing $100,000 income to him, as required by Guidelines § 22. To the contrary, the court explained its reasons in its minute entry.

¶22 In sum, the evidence supports the court's refusal to accept Father's contention that he could only earn $2,000 per month. The court

was in the best position to judge Father's credibility. *See Gallagher*, 169 Ariz. at 203. Given the lack of any documentary evidence to support Father's contentions, we find no abuse of discretion.

## CONCLUSION

**¶23** For the foregoing reasons, we affirm the spousal-maintenance and child-support orders.

