NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

SHELLEY TRENNON CAREY, *Petitioner/Appellee,*

*v.*

JUANITA SUZANNA CAREY, *Respondent/Appellant.*

No. 1 CA-CV 20-0552 FC
FILED 8-19-2021

Appeal from the Superior Court in Maricopa County
No. FC2019-092603
The Honorable Marvin L. Davis, Judge

**VACATED AND REMANDED**

COUNSEL

High Desert Family Law Group, LLP, Phoenix
By Craig Peter Cherney
*Counsel for Petitioner/Appellee*

Juanita S. Chleboun (Carey), Gilbert
*Respondent/Appellant*

**MEMORANDUM DECISION**

Judge David B. Gass delivered the decision of the court, in which Presiding
Judge D. Steven Williams and Judge James B. Morse Jr. joined.

**G A S S**, Judge:

¶1        Mother, Juanita Suzanna Carey, appeals the superior court's order modifying child support. We vacate the order and remand for further consideration.

## FACTUAL AND PROCEDURAL HISTORY

¶2        Mother and father, Shelley Trennon Carey, were divorced in 2011 in Florida. The dissolution decree ordered the parents to share parental responsibility for their two minor children, designated mother the primary residential parent, and gave father parenting time during school breaks. The Florida court ordered father to pay monthly child support of $1,700. After the Florida court entered the decree, mother and the children moved to Arizona, and father moved to Hawaii.

¶3        In 2019, father registered the Florida decree and child support order in Arizona and petitioned to modify parenting time and child support. Father sought modification because both parents left Florida, the parents were not strictly following the Florida decree's parenting-time provisions, the children were substantially older and could travel to father's home in Hawaii, and both parents' incomes had changed.

¶4        Mother agreed with some of father's requested changes but disputed others. She opposed father's request to reduce his child support obligation, arguing he earned more now than when the Florida court set the original child support amount. She urged the superior court to recalculate child support based on father's current income.

¶5        Ultimately, the parties partially resolved the parenting time issues and the superior court adopted their agreement under Rule 69 of the Arizona Rules of Family Law Procedure. After a hearing, the superior court found no significant and continuing change of circumstances to support modifying the parenting plan outside of the Rule 69 agreement.

¶6        The superior court, however, found modification of the existing child support order appropriate and reduced father's monthly child support payment from $1,700 to $857. The superior court incorporated a child support worksheet showing the income it attributed to each parent and the allocation of parenting time.

¶7        Mother timely appealed. This court has jurisdiction under article VI, section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21.A.1 and 12-2101.A.1.

**ANALYSIS**

**¶8**  Generally, this court reviews a child support award for an abuse of discretion, and accepts the superior court's factual findings unless clearly erroneous. *Sherman v. Sherman*, 241 Ariz. 110, 112, ¶ 9 (App. 2016). In addition, this court defers "to the trial court's determination of witnesses' credibility and the weight to give conflicting evidence." *Gutierrez v. Gutierrez*, 193 Ariz. 343, 347, ¶ 13 (App. 1998). *De novo* review, however, applies to conclusions of law, including whether specific income or expenses should be included in the child support calculation. *Sherman*, 241 Ariz. at 113, ¶ 9; *see also Patterson v. Patterson*, 226 Ariz. 356, 358–59, ¶¶ 4, 7 (App. 2011). And this court reviews *de novo* the superior court's interpretation of the 2018 Arizona child support guidelines in A.R.S. § 25-320 appendix (guidelines). *Sherman*, 241 Ariz. at 113, ¶ 9.

**¶9**  When, as here, the parties did not request findings of fact or conclusions of law, this court presumes the superior court "found every fact necessary to support the judgment" and will affirm if any reasonable construction of the evidence justifies the decision. *Neal v. Neal*, 116 Ariz. 590, 592 (1977) (citation omitted).

**I.**  **Gross Income**

  **A.**  **Father's Income**

**¶10**  Mother challenges the superior court's decision to attribute $6,748 per month—$80,976 per year—to father as income. She argues the superior court failed to include a $32,000 salary father received from his ownership of a business entity and a $622,500 "gift/loan" from his parents. Our review shows no error.

**¶11**  Father retired from the military effective June 1, 2020, and his monthly retirement pay is $4,081. Upon retirement, he also began receiving a $32,000 annual salary from Merrill, Inc., a company his family owns. The superior court attributed a total monthly gross income of $6,748 to father, including $4,081 per month for father's military retirement pay and $2,667 per month for his Merrill, Inc. salary. In short, the superior court calculated father's income correctly.

**¶12**  Mother also argues the superior court should have treated as income the $622,500 father received from paternal grandmother. Father testified paternal grandmother loaned him and his current wife the money to purchase several businesses and submitted a promissory note documenting the terms of the loan. Because the promissory note was not

notarized, mother argues the funds were a gift to father and should be included in his gross income.

¶13        Depending on the circumstances, the superior court may attribute gifts and loan proceeds to a parent as gross income in the child support calculation. *Sherman*, 241 Ariz. at 114, ¶ 15. "The crucial inquiry is whether the parent received 'actual money or cash-like benefits . . . available for expenditures.'" *Id.* (citing *Cummings v. Cummings*, 182 Ariz. 383, 385 (App. 1994)). If the parent acquired "a source of funds for living and personal expenses, from which the children would have benefited had their parents not divorced[,]"those monies constitute gross income. *Sherman*, 241 Ariz. at 114, ¶ 15.

¶14        Father did not use those funds to pay his living expenses, and no evidence establishes the children would have benefited from the funds if their parents had not divorced. The superior court did not abuse its discretion when it concluded father acquired $622,500 from paternal grandmother to purchase a business and fund its operations, not for living and personal expenses.

### B.        Mother's Income

¶15        In 2019, mother received two forms of income from State Farm Mutual Automobile Insurance Company. First, she received $39,976 in wages. Beginning June 1, 2019, she received $130,856 in revenue for her work as an insurance agent operating as an independent contractor. Mother's insurance agency incurred $172,694 in business expenses in 2019, resulting in a loss of $41,838.

¶16        The superior court attributed income of $7,418 per month—$89,018 annually—to mother. Mother disputes this calculation, claiming she received no income in 2019 after accounting for her $172,694 business expenses, which exceeded the $130,856 revenue her insurance agency generated plus her $39,976 earned income as a State Farm employee. She argues the superior court erred by attributing $7,418 in monthly income to her rather than minimum wage.

¶17        The guidelines define gross income as "income from any source," including salaries, wages, and unemployment insurance benefits. Guidelines § 5.A. For "self-employment[,] . . . gross income means gross receipts minus ordinary and necessary expenses required to produce income." Guidelines § 5.C. Mother's wages constitute gross income separate and apart from her self-employment income. *See* guidelines § 5.A. Mother's self-employment gross income, calculated separately, is

determined by subtracting gross losses and expenses from gross receipts. *See* guidelines § 5.C.

¶18     We reject mother's suggestion the superior court was required to offset her earned wages with her business losses. The guidelines only allow self-employment or other business income to be offset by the expenses necessary to generate that income. *See* guidelines § 5.C. Nothing in the guidelines requires the superior court to offset wages with losses incurred in the operation of a business. *See generally* guidelines § 5; *see also Cummings*, 182 Ariz. at 385 ("[G]ross income for child support purposes is not determined by the gross income shown on the parties' income tax returns, but rather on the actual money or cash-like benefits received by the household which is available for expenditures.").

¶19     Applying the above, mother had two sources of income: wages and self-employment. Mother earned $39,976 in wages in 2019, but she had no income from her self-employment because her $172,694 business expenses exceeded her $130,856 revenue. The superior court, however, attributed $89,018 income to mother—an amount equal to her $130,856 business revenue minus her $41,838 losses. As a matter of law, this calculation is incorrect. *See* guidelines § 5.

¶20     Accordingly, we vacate the superior court's child support award and remand for a redetermination of mother's gross income. Because we remand, we note the record shows mother's agency earned $128,024 in revenue from January 1, 2020, through June 30, 2020. The record does not contain mother's 2020 business expenses. Effective July 1, 2020, State Farm did not extend mother's agent agreement. Mother testified she was receiving unemployment benefits—considered part of gross income—since then. *See* guidelines § 5.A.

## II.     Parenting-Time Costs Adjustment

¶21     Mother contends the superior court erred by crediting father with 73 days of parenting time per year.

¶22     The guidelines require the superior court to adjust a parent's proportionate share of the total child support obligation to account for costs associated with parenting time. Guidelines § 11. To adjust the child support obligation, the superior court must determine the total amount of parenting time awarded to, or historically enjoyed by, the parent with less parenting time—here father. Guidelines § 11.

¶23         The superior court credited father with 73 days of parenting time and reduced his proportionate share of the monthly total support obligation by $199.08. Mother challenges the credit, arguing the parenting time schedule reduced father's parenting time from 73 days to 41 days. Father argues "the [c]ourt simply reaffirmed the parties' prior allocation of [p]arenting [t]ime days as detailed in the original Florida state court custody orders." According to father, the only change involved the adoption of the parties' agreement giving each parent more parenting time for each parent's respective birthday.

¶24         The Florida decree granted father parenting time with the children over summer break, beginning 5 days after school ends until 5 days before school resumes. The decree also provided for alternating Thanksgiving, winter, and spring breaks, and gave mother and father parenting time on their birthdays and on Mother's Day and Father's Day, respectively.

¶25         Father sought to modify the parenting plan to give him parenting time for one-half of each spring, winter, and fall break, and to alternate Thanksgiving break. Father sought additional parenting time by alternating extended or holiday weekends. Father also asked for parenting time for certain milestone events and to permit the children to visit with his wife or parents if father could not use his parenting time.

¶26         In her response to the petition, mother agreed to divide the seasonal school breaks, alternate the Thanksgiving holiday, and allow parenting time access for milestone events. But mother did not agree to father's other requests.

¶27         The parties met for a resolution conference on October 14, 2019, and reached an agreement on some of the parenting-time issues. Their agreement is not included in the record, though father provided it to the superior court during an evidentiary hearing. Despite their agreement, the parties requested clarification and resolution of outstanding parenting-time issues at the evidentiary hearing.

¶28         At the hearing, the parties agreed each parent would have additional parenting time on his or her birthday. Outside the birthday agreement, the superior court found no substantial and continuing change of circumstances warranting modification of the parenting time schedule to which the parties had agreed at the October 14, 2019 resolution conference. The superior court then adopted the parties' October 14, 2019 parenting plan and incorporated it by reference in its order. Father, therefore,

incorrectly argues the only modification involved additional birthday parenting time, because the superior court also incorporated the October 14, 2019 agreement.

**¶29**     We cannot determine whether any evidence supported the superior court's use of 73 days in the child support calculation because the October 14, 2019 agreement is not in the record. Typically, if evidence is omitted from the record, this court presumes the evidence supports the superior court's ruling. *See Baker v. Baker*, 183 Ariz. 70, 73 (App. 1995). Because we vacate the child support order and remand for the superior court to determine mother's gross income and recalculate child support, we direct the superior court to further consider the parenting-time issue on remand and suggest the better practice is to ensure a court-approved parenting plan be filed in the superior court's docket.

## ATTORNEY FEES ON APPEAL

**¶30**     Father requests his attorney fees on appeal under A.R.S. § 25-324.A. After considering the relevant factors, we decline to award father attorney fees without prejudice, but the superior court may consider any requests for fees on remand, including fees incurred in this appeal, pending the outcome of this litigation. *See Eans-Snoderly v. Snoderly*, 249 Ariz. 552, 559, ¶ 27 (App. 2020).

**¶31**     As the successful party on appeal, we award mother her reasonable costs under A.R.S. § 12-342 upon compliance with ARCAP 21.

## CONCLUSION

**¶32**     We vacate the superior court's child support order and remand to the superior court for recalculation consistent with this decision.



AMY M. WOOD • Clerk of the Court
FILED:     AA

7