NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

STATE OF ARIZONA, ex rel., DEPARTMENT OF ECONOMIC
SECURITY, (BUSINGE KATENTA), *Petitioners/Appellees*,

*v.*

ALEXANDRA CORONA, *Respondent/Appellant*.

No. 1 CA-CV 23-0280 FC
FILED 4-16-2024

Appeal from the Superior Court in Maricopa County
No.   FC2021-002516
The Honorable Michael Rassas, Judge

**AFFIRMED IN PART; REVERSED AND REMANDED IN PART**

COUNSEL

Stanley David Murray Attorney at Law, Scottsdale
By Stanley David Murray
*Counsel for Petitioner/Appellee*

Arizona Attorney General's Office, Phoenix
By Amber Pershon
*Counsel for Petitioner/Appellee Arizona Department of Economic Security*

Alexander R. Arpad, Attorney at Law, Phoenix
By Alexander R. Arpad
*Counsel for Respondent/Appellant*

**MEMORANDUM DECISION**

Presiding Judge D. Steven Williams delivered the Court's decision, in which Judge Samuel A. Thumma and Judge Paul J. McMurdie joined.

**W I L L I A M S**, Judge:

**¶1** In this paternity action, Alexandra Corona ("Mother") appeals the superior court's child support orders for retroactive support, including the amount of child support income attributed to Businge Katenta ("Father"). She also appeals the court's refusal to award past child support and its denial of attorneys' fees. For the following reasons, we affirm in part and reverse and remand in part.

## FACTS AND PROCEDURAL HISTORY

**¶2** Mother and Father never married but have a minor child in common. In April 2021, Father petitioned the superior court to establish paternity, legal decision-making authority, parenting time, and child support. After holding an evidentiary hearing, the superior court awarded Mother temporary child support of $121 per month beginning in August 2021.

**¶3** More than a year later, following trial on Father's petition, the superior court issued final orders. For child support, the court attributed to Father $7,406 in monthly income and ordered that he pay Mother $691 per month effective December 2022. The court did not address either retroactive or past child support and denied both parties' requests for attorneys' fees.

**¶4** Mother moved to alter or amend the orders. She argued that the superior court: (1) should have ordered retroactive child support back to the date the paternity action began; (2) should have ordered past child support for the three years before the paternity action commenced; (3) failed to consider evidence she presented at trial placing Father's attributed monthly income at $12,068; and (4) improperly denied her request for attorneys' fees, asserting Father has substantially greater financial resources and took unreasonable positions throughout the litigation.

**¶5** The superior court amended its final orders by retroactively extending temporary child support back to May 1, 2021 — the first day of

the month after the paternity action commenced. The court otherwise denied all of Mother's requests to modify its final orders.

**¶6**        Mother timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. § 12-2101(A)(1).

## DISCUSSION

**¶7**        We review child support awards for an abuse of discretion. *Birnstihl v. Birnstihl*, 243 Ariz. 588, 590, ¶ 8 (App. 2018). In doing so, we accept the superior court's factual findings unless clearly erroneous but review *de novo* the court's conclusions of law and interpretation of the Arizona Child Support Guidelines, A.R.S. § 25-320 app. ("the Guidelines"). *Id.* at 590–91, ¶ 8. "A finding of fact is not clearly erroneous if substantial evidence supports it, even if substantial conflicting evidence exists." *Castro v. Ballesteros-Suarez*, 222 Ariz. 48, 51–52, ¶ 11 (App. 2009) (quotation and citation omitted). On review, we do not reweigh conflicting evidence or second-guess the superior court's credibility assessments. *Lehn v. Al-Thanayyan*, 246 Ariz. 277, 284, ¶ 20 (App. 2019); *Hurd v. Hurd,* 223 Ariz. 48, 52, ¶ 16 (App. 2009).

*I.        Retroactivity of a Child Support Order to the Date the Paternity Action Commenced*

**¶8**        Mother argues that once the superior court awarded child support at trial, it was obligated to order its award retroactively "to at least the commencement of the parentage proceeding."

**¶9**        Section 25-809(A) -(B) states in relevant part:

> A. [After paternity is established,] the court shall direct, subject to applicable equitable defenses and using a retroactive application of the current child support guidelines, the amount, if any, the parties shall pay for the past support of the child and the manner in which payment shall be made.

> B. The court shall enter an order for support determined to be due for the period between the commencement of the proceeding and the date that current child support is ordered to begin.

**¶10**        We recently considered this statute in *Gelin v. Murray*, 251 Ariz. 544 (App. 2021). In that case, we held that A.R.S. § 25-809(A) "grants

the superior court general authority in paternity actions to award past child support." *Id.* at 547, ¶ 14. Subsection (B) "clarifies the constraints of that authority and requires that, subject only to applicable equitable defenses, the court *shall* enter an order for support due from the petition filing date to the date current support is ordered to begin." *Id.*

¶11 The superior court's temporary child support award of $121 per month effectively served as a placeholder until a final award could be determined. Once the court made its final award, it was presumed that the court would enter that award retroactive to at least the first day of the month following the commencement of the action. But in doing so, the court was obligated to consider whether "equitable defenses" required something else. For example, Father's parenting time changed between the temporary orders and the final award, and consequently, could have justified some amount other than the $691 per month being awarded retroactively to May 2021. *See* A.R.S. § 25-809(B). But on this record, the superior court's rationale for refusing to award $691 per month retroactively is unclear. We therefore vacate the court's child support award and remand for the court to issue a new child support award.

*II.     Admission of Evidence*

¶12 In her motion to alter or amend the final orders, Mother submitted new evidence to the superior court, including two child support worksheets that attributed new figures for Father's income and parenting time. Mother also relied on her Trial Exhibit 40, which was not admitted, as proof that Father's income should have been attributed at $12,068 per month.

¶13 Mother concedes on appeal that the superior court did not admit Exhibit 40 into evidence. But she argues the court abused its discretion by excluding the exhibit because it is probative of Father's business dealings and the parties did not invoke the Arizona Rules of Evidence. *See* Ariz. R. Fam. L. P. 2.

¶14 We will affirm the superior court's rulings on the exclusion of evidence absent a clear abuse of discretion. *Belliard v. Becker*, 216 Ariz. 356, 358, ¶ 13 (App. 2007). Here, Exhibit 40 contained (in addition to a Schedule C from 2020 for a business Father allegedly owned) a list of seven different businesses, most of which were owned by his estranged wife and, possibly, her stepson.

¶15 On appeal, Mother argues the superior court was free to disregard the irrelevant parts of this exhibit. But she fails to show that she

either made this argument at trial or presented the court with a new exhibit omitting the objectionable material. On this record, the court did not abuse its discretion by sustaining Father's objection to Exhibit 40.

*III.    Past Child Support for Three Years Before the Paternity Action Began*

**¶16**        Mother next argues that A.R.S. § 25-809(A)-(B) required the superior court to grant past child support for three years before the paternity action commenced, subject only to equitable defenses.

**¶17**        We decided this issue in *Gelin*. 251 Ariz. at 547, ¶ 15. There, we held that under A.R.S. § 25-809(A)-(B), the court has "*discretion* to order retroactive child support for up to three years before the petition filing date." *Id.* Mother argues that we should overturn our holding in *Gelin* and instead follow an unpublished memorandum decision, *Petro v. Gianini*, in which we characterized A.R.S. § 25-809(A)-(B) as creating a "presumptive three years of past support," 1 CA-CV 16-0313 FC, 2017 WL 1279002, at *2, ¶ 7 n.3 (Ariz. App. Apr. 6, 2017) (mem. decision).

**¶18**        In *Gelin*, we rejected *Petro*, holding "the language of the statute" does not support a presumption of three years of past support. 251 Ariz. at 547, ¶ 11. As noted, *supra* ¶ 10, we instead interpreted A.R.S. § 25-809(A) as "grant[ing] the superior court general authority in paternity actions to award past support," but recognized that subsection (B) constrains that authority, and absent a countervailing equitable defense, requires the court to "enter an order for support due from the petition filing date to the date current support is ordered to begin." *Id.* at 542, ¶ 14. Concerning past support *predating* the commencement of a paternity action, we construed A.R.S. § 25-809(A)-(B) as "grant[ing] the court *discretion* to order retroactive child support for up to three years before the petition filing date." *Id.* at ¶ 15. Applying *Gelin* here, we affirm our holding that under A.R.S. § 25-809(A)-(B), the court has discretion to determine whether to grant past child support for the three years before the filing of a paternity petition.

**¶19**        Mother alternatively argues that even if discretionary, the superior court's ruling is not supported by the record. According to Mother, the court "most heavily relied" on a 2019 child support order—from a case involving Father's child from another relationship—to attribute to him an income of $7,406 per month. She asserts that unlike the 2019 child support order, the evidence she put forward "cover[ed] the period from 2019 to 2022, and was relevant to both present and past child support." To support her contention, Mother highlights evidence of Father's 2021 financing

application for a BMW, in which, just one month before he filed his petition, Father claimed to earn $348,000 per year as the president of a company. She also points to Father's admission, in his affidavit of financial information, that he received over $600,000 in loans from his wife/employer for "living expenses" over an unspecified period. This evidence, while probative of Father's income, fails to establish why Mother is entitled to past child support for the three years before the paternity action. *See* A.R.S. § 25-809(A).

**¶20**        Mother contends that to the extent she failed to establish that she was entitled to past support, the superior court should have provided her with more time at trial to present evidence. She made the same argument in her motion to alter or amend, stating that she "did not have time allotted to her at trial to provide testimony regarding her requests for back child support (both the mandatory and permissive back support amounts)," and therefore was deprived of a fair trial.

**¶21**        Addressing this argument in its ruling on Mother's motion, the superior court explained that it allotted the parties equal time to present their case at trial. But "despite having ample opportunity," Mother "did not present sufficient evidence to support the claims of past and/or retroactive child support." Nor does the record reflect that Mother requested additional time to present such evidence. Therefore, on this record, the court did not abuse its discretion by denying Mother's request for three years of past child support.

*IV.    Father's Child Support Income*

**¶22**        Mother contends the superior court's attribution to Father of a monthly income of $7,406 is contrary to the evidence she presented at trial.

**¶23**        In attributing income to Father, the superior court found:

> Father is a realtor and drives for Uber. Father just moved into a new house and pays $3,000 a month in rent. According to Father's [Affidavit of Financial Information], Father has monthly expenses in the amount of $235 for utilities, $930 for food, $140 for transportation, and $1,000 for miscellaneous expenses. This is an additional $2,300 per month of expenses on top of rent. Thus, the Court believes Father has at least $5,500 a month in expenses. In Father's child support order in FC2011-004973 issued in 2019, Father is attributed an income of $7,406. Based on Father's expenses and earning ability the Court shall attribute him the same income in this order.

These findings were sufficient under the Guidelines, which require that the court "state that all or a portion of the income is attributed" and "explain the reason for its decision." Guidelines §§ II.A.4.c. & X.D.3.

¶24        Mother nonetheless argues that the superior court failed to consider trial evidence about more than $600,000 in non-repayable loans Father received from his estranged wife. She maintains that the loans, even if legitimate, should be attributed to Father as income.

¶25        Relying on *Sherman v. Sherman*, Mother argues that "income" for child support purposes may include a parent's access to a line of credit if that parent draws on the loan to supplement his or her standard of living. 241 Ariz. 110, 114, ¶ 15 (App. 2016). The father in *Sherman* had a serious medical event that rendered him unable to work. *Id.* at 112, ¶ 5. To pay his living expenses during the parties' divorce, he used a line of credit. *Id.* By trial, he had used $35,000 of the $100,000 line of credit available to him. *Id.* Because he had control over these funds and used them to support his lifestyle, we held the court could attribute these loans to him as income for the purpose of calculating child support. *Id.* at 114, ¶ 16.

¶26        Unlike the circumstances in *Sherman*, here, Mother failed to establish that Father had access to income from the loans during the relevant period. Father testified that he relied on these loans from his estranged wife in the unspecified past, and the record reflects that he executed the last promissory note in 2018 and remitted his last loan payment in 2020.

¶27        Certainly, Mother presented evidence that Father's income was higher than the $3,000 per month he claimed at trial. Apart from the non-repayable loans he received, the court pointedly questioned Father about the BMW financing application in which he listed his income as $348,000, his child support obligation for his daughter from another relationship, and contradictions in his financial affidavit—including higher reported expenses than his alleged income. The court's final orders reflect its detailed consideration of this evidence and its attribution of a substantially higher monthly income than Father claimed.

¶28        Although the parties presented conflicting evidence concerning Father's income, we will not reweigh the evidence on appeal. *See Lehn*, 246 Ariz. at 284, ¶ 20. The superior court's findings are supported by the record and not clearly erroneous. *See Castro*, 222 Ariz. at 51–52, ¶ 11. Mother has shown no error.

*V.    Attorneys' Fees in the Superior Court*

**¶29**        Mother challenges the denial of her attorneys' fee claim. We review a ruling denying attorneys' fees for an abuse of discretion. *Murray v. Murray*, 239 Ariz. 174, 179, ¶ 20 (App. 2016). We will not reverse such a ruling "if there is any reasonable basis for it." *In re Marriage of Gibbs*, 227 Ariz. 403, 410, ¶ 20 (App. 2011) (quotation omitted).

**¶30**        In a paternity action, A.R.S. § 25-809(G) governs attorneys' fees:

> After considering the financial resources of both parties and the reasonableness of the positions each party has taken throughout the proceedings, the court may order a party to pay a reasonable amount to the other party for the costs and expenses of maintaining or defending any proceeding under this article.

**¶31**        Here, the superior court declined to award either party attorneys' fees, finding "there is no substantial disparity of financial resources between the parties," and that both parties acted unreasonably during the proceedings.

**¶32**        Mother first challenges the superior court's finding of no substantial disparity in the parties' financial resources. This finding, she argues, contradicts the child support orders, which credited Mother and Father with monthly incomes of $4,333 and $7,406, respectively. The term "financial resources," however, encompasses more than just the parties' respective incomes. *See Magee v. Magee*, 206 Ariz. 589, 592, ¶ 17 (App. 2004) (holding that a court must consider factors such as the parties' assets, income, and "other similar matters" when considering the financial resources of both parties under A.R.S. § 25-324). Here, there was no evidence that either party had significant assets. Moreover, their financial affidavits reflect that they both rent their homes and have significant debts—although Father's debts are much higher. On this record, sufficient evidence supports the superior court's finding of no substantial disparity in the parties' financial resources.

**¶33**        Mother also contests the superior court's finding that she acted unreasonably. But the record supports this finding. Throughout the proceedings, Mother attempted to limit Father's parenting time based on unsubstantiated allegations that he suffers from mental health challenges. She also claimed that he refused to turn over counseling records—a claim

8

the court advisor refuted at trial. Mother's unsupported contentions caused Father to incur unnecessary attorneys' fees, costs, and expert witness fees.

¶34      The superior court also criticized Mother's decision to bring a police escort to the airport for a parenting exchange at the gate. When the court asked her, repeatedly, why she felt it necessary to do this, Mother responded that Father was two days late in returning the child from his trip to New York. The court admonished her to consider carefully whether to involve the police in parenting time disagreements in the future.

¶35      Additionally, the superior court found Mother unreasonable because she "issued numerous subpoenas during this litigation relating to individuals who are not directly related to this case." Father testified that Mother issued these subpoenas to his estranged wife, as well as his wife's stepson and parents. He also testified that Mother issued subpoenas to his current girlfriend and her ex-husband. Mother issued these subpoenas herself, despite being represented by counsel, and failed to serve copies of the subpoenas on Father, which, according to his testimony, prompted him, at least in part, to hire an attorney.

¶36      On this record, Mother has shown no error.

*VI.    Attorneys' Fees and Costs on Appeal*

¶37      Both Mother and Father request attorneys' fees under A.R.S. § 25-809(G). We have considered the parties' relative financial resources, to the extent we are able, and the reasonableness of the positions each took on appeal. *See* A.R.S. § 25-809(G). In the exercise of our discretion, we decline to award attorneys' fees. Because each party is partially successful on appeal, each shall bear its own costs.

**CONCLUSION**

¶38      We vacate the superior court's child support award and remand to allow the court to recalculate that award retroactive to at least May 2021. We otherwise affirm the court's orders.



AMY M. WOOD • Clerk of the Court
FILED: AA