NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

ALEXXA KIRK, *Petitioner/Appellee,*

*v.*

KLINTON FITCH, *Respondent/Appellant.*

No. 1 CA-CV 25-0341 FC

FILED 12-16-2025

Appeal from the Superior Court in Maricopa County
No. FC2023-093850
The Honorable David E. McDowell, Judge

**AFFIRMED**

COUNSEL

Klinton Fitch
*Respondent/Appellant*

Alexxa Kirk
*Petitioner/Appellee*

**MEMORANDUM DECISION**

Judge Andrew M. Jacobs delivered the decision of the Court, in which
Presiding Judge D. Steven Williams and Judge Michael S. Catlett joined.

**J A C O B S**, Judge:

¶1 Klinton Fitch appeals a family court decree establishing his legal decision-making authority, parenting time rights, and child support obligations as to his two children. Fitch argues the decree sets an incorrect amount of prospective and back child support, and that Alexxa Kirk, his children's mother, violated its terms. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

### A. Kirk Files a Petition to Establish Legal Decision-Making, Parenting Time, and Child Support, and Fitch Responds.

¶2 Fitch and Kirk began dating and moved in together in late 2017. They never married but had two children, O.F., and H.F. In February 2023, they separated.

¶3 In September 2023, Kirk filed a petition to establish legal decision-making, parenting time, and child support for the children. Kirk sought sole legal decision-making authority, citing domestic violence Fitch committed in February 2023 and an order of protection she obtained against him in September 2023. She also asked that Fitch pay child support and have supervised parenting time with both children. Fitch responded, acknowledging the domestic violence incident but asking for equal parenting time and joint legal decision-making. He opposed Kirk's child support request, stating he had made voluntary pre-petition support payments.

¶4 In February 2024, Fitch and Kirk attended a parenting conference with a conciliator, who filed a report with the court assessing the probability of their successful co-parenting. Kirk and Fitch also disclosed to the court their employment histories, financial situations, and children's financial needs.

### B. The Court Orders Joint Legal Decision-Making, Parenting Time for Fitch, and Child Support.

¶5 On March 11, 2025, the court held a hearing on Kirk's petition. Kirk, Fitch, and Trevor Brothers (who lives with Kirk and her new fiancé and who Kirk calls the children's godfather) all testified. The court received in evidence: further financial information about Kirk and Fitch; the police report from the February 2023 domestic violence incident; several of Fitch's social media posts; records of the Department of Child Safety ("DCS"), and expert notes, reports, and recommendations.

**¶6** On March 19, 2025, the court entered a Decree Establishing Legal Decision-Making, Parenting Time And Child Support. The Decree: (1) granted Kirk and Fitch joint legal decision-making, requiring them to communicate through a third party, and then by email after the order of protection expires; (2) made Kirk the primary residential parent; (3) established a graduated parenting time schedule allowing Fitch increasing parenting time if he met certain requirements; (4) entitled both parents to phone time with the children when not exercising in-person parenting time, during which the parent with current physical custody must not be present; and (5) ordered Fitch to pay prospective and back child support.

**¶7** The Decree detailed the factual findings supporting the child support orders and included the Child Support Worksheets used to calculate the awards. The court considered the parties' 2023 and 2024 incomes, their incomes as of the date of trial, and their respective contributions to the children's childcare and health insurance. The court specifically noted "Fitch testified he made one payment toward child support after the parties separated in the amount of $150.00," and that he "has one other child for whom he provides support in the sum of $400.00 per month." Then, following the Arizona Child Support Guidelines and using the Child Support Worksheets, the court calculated Fitch's obligations running from October 2023, the month after Kirk petitioned. The court determined Fitch owes $698.00 per month in prospective child support to begin effective April 1, 2025, and $94.00 per month toward a judgment for past support of $13,407.00, until that judgment is satisfied.

### C. Fitch Disputes the Child Support Orders, Then Appeals; Kirk Petitions to Enforce the Child Support Orders.

**¶8** Fitch moved the court to reconsider its child support orders, arguing the child support awards were unjustified. He argued: he had not been able to visit the children or communicate with Kirk due to the order of protection; he had made voluntary pre-petition support payments; and his support obligation to his other child would require him to get a second job to make all payments, hindering his ability to exercise parenting time and to pay for housing.

**¶9** The court denied both requests for reconsideration. It explained the prospective award reflected the presumptive amount determined by the child support calculator and that Fitch was required at the hearing to "set forth evidence sufficient for the Court to determine that a deviation [from the presumptive amount was] in the best interest of the children." Further, the court explained it "carefully considered the request

for past support and in its calculation considered Mr. Fitch's child support obligation to his other child" and that "[a]n Order of Protection does not prevent a party from paying child support."

¶10        Fitch timely appealed.  We have jurisdiction.  Ariz. Const. art. 6, § 9; A.R.S. §§ 12-2101(A)(1), -120.21(A)(1).

## DISCUSSION

¶11        We review Fitch's challenges to the Decree and to the denials of his motions for reconsideration for abuse of discretion.  *Nickel v. Potter*, 256 Ariz. 323, 326 ¶ 9 (App. 2023); *Milinovich v. Womack*, 236 Ariz. 612, 615 ¶ 7 (App. 2015).  "We accept the court's factual findings unless clearly erroneous but review de novo the court's conclusions of law and interpretation of the Arizona Child Support Guidelines."  *Sherman v. Sherman*, 241 Ariz. 110, 113 ¶ 9 (App. 2016).

## I.  The Court Did Not Abuse Its Discretion in Ordering Fitch to Pay Prospective and Back Child Support.

¶12        Fitch asks us to reverse and direct the modification of the Decree.  He argues the order of protection kept him from visiting the children or communicating with Kirk, points to his voluntary pre-petition support payments, and argues his support obligation to his other child makes the Decree too burdensome.  Fitch asks us to reduce or eliminate his child support and back support obligations.  Kirk argues we should dismiss the appeal because Fitch failed to comply with ARCAP 13, and that the Decree is consistent with Arizona law and the Child Support Guidelines.

### A.  ARCAP 13

¶13        Kirk is right that Fitch failed to comply with ARCAP 13.  *See* ARCAP 13 (a), (c), (d), (f).  But because resolution of Kirk's appeal affects the best interests of minor children, we exercise our discretion to address the merits of his appeal.  *See Hays v. Gama*, 205 Ariz. 99, 102-04  ¶¶ 18-23 (2003) (reversing contempt sanctions that impacted best-interests determination); *Hoffman v. Hoffman*, 4 Ariz. App. 83, 85 (1966) (declining to find arguments waived where interests of minor children were involved).

### B.  Prospective and Back Child Support

¶14        Fitch does not demonstrate that the court abused its discretion in fashioning the Decree's child support awards.  Following the Guidelines and using the Child Support Worksheet, the court considered Fitch's and

4

Kirk's incomes, employment, payments made for the children's childcare and health insurance, and the children's time spent with each parent. As to back support, the court also determined that it had not previously ordered child support and accounted both for Fitch's obligation to his other child and the $150 voluntary support payment he made. Based on this information, the court calculated Fitch's presumptive obligations. And as the court emphasized in denying Fitch's motions for reconsideration, Fitch presented no evidence to support a deviation from the presumptive totals for support in the Guidelines. Because the court did not abuse its discretion, we decline to vacate or modify the Decree.

## II. This Court is Not the Proper Forum to Seek Modification of Family Court Orders Based on Alleged Non-Compliance.

¶15 Fitch also argues the Decree, including its legal decision-making, parenting time, and child support orders, should be modified because Kirk violated it. He argues she violated the Decree by blocking his parenting time, and by her presence during his phone time with the children. For those reasons, he asks that we grant him "50/50 custody" and the right to be included in all decision-making.

¶16 Fitch is free to raise those arguments in the family court, but this Court is not the proper forum for Kirk to argue that Fitch's failure to comply with the Decree justifies any modifications. *See* A.R.S. § 25-411(A) (Without court permission to file earlier, parent must wait one year from its date to petition "to modify a legal decision-making or parenting time decree," but need only wait six months to petition for modification "based on the failure of the other parent to comply with the provisions of the order."). Any such petition "must be based on new evidence arising after the entry of the parenting order and be in the child[ren]'s best interests." *Gish v. Greyson*, 253 Ariz. 437, 443 ¶ 23 (App. 2022).

## CONCLUSION

¶17 We affirm.



MATTHEW J. MARTIN • Clerk of the Court
FILED:          JR